CROWN COTTON MILLS *v.* McNALLY, by next friend.

1. It is the duty of a master to give instructions to a servant who is inexperienced in the operation of a machine with which he is to work; the purpose of such instructions being to enable the servant to avoid dangers incident to the operation of the machine, if there are such. If the servant becomes acquainted with the dangers incident to the operation of the machine without such instructions, the master would not be liable for injury resulting to the servant from such danger, even though he had failed to give the instructions at the time that the servant was placed at the work.
2. While in the present case the evidence authorized a finding that the master had failed to give instructions in reference to the danger that the plaintiff incurred in operating the machine at which he worked, the evidence demanded a finding that the plaintiff had all the information in reference to the danger incurred in operating the machine which due instructions from the master would have given, and hence he assumed all the risks incident to the operation of a machine of such character, and the injury complained of was the result of one of the risks thus assumed.
3. A new trial should have been granted upon the ground that the verdict was without evidence to support it.

Submitted July 18, 1906.—Decided January 18, 1907.

Action for damages.    Before Judge Fite.    Whitfield superior court.    November 17, 1905.

*R. J. & J. McCamy,* for plaintiff in error.

*Arnold & Arnold, Harvey Hill,* and *George G. Glenn,* contra.

COBB, P. J. This case makes its second appearance. *Crown Cotton Mills* v. *McNally,* 123 *Ga.* 35. Upon a second trial the plaintiff recovered a verdict, and the defendant complains of the

refusal to grant a new trial. From the statement of facts in the report when the case was here before, the circumstances under which the plaintiff was injured, and the alleged negligence of the defendant, will appear, and need not be recited here.

As to whether the master had warned the plaintiff concerning the dangerous character of the machinery he was operating, the evidence was conflicting, but it authorized a finding that the master had failed in the discharge of his duty. The door in the breast of the machine being left open was the result of the act of a fellow-servant, and the plaintiff can not recover on account of this act; for, although he was an infant, he was above the age of fourteen years and within the operation of the fellow-servant rule. *Evans v. Josephine Mills,* 119 *Ga.* 453. The evidence authorized a finding that the master knew of the danger in operating the machinery. The case, therefore, turns upon the question whether the plaintiff had equal means of knowing of this danger, or by the exercise of ordinary care he could have discovered it. If he knew of the danger, he had all the information that the master had; he had acquired all the information that minute instructions from the master in this regard would have given him. The purpose of instructions by the master to inexperienced servants is to inform them of the danger. If the servant knows of the danger, the absence of instructions would not give a right of recovery against the master, where the servant knowingly operated a dangerous machine, thereby assuming the risk incident to his employment. The plaintiff admits that he knew there was a door in the breast of the machine; that when this door was opened it exposed a revolving piece of machinery, consisting of saws, or teeth, or something of that character; that when the roll of cotton fell down over the machine, there was concealed behind the cotton this door; and also that this door might be left open either through the negligence of a fellow-servant or otherwise. One of the risks of his employment, in the operation of this machine, was that he might be called upon to operate it with the door concealed by the roll of cotton when he could not determine whether the door was open or shut. He admitted that he had seen an employee sharpen the teeth of the machine, which appeared behind this door, and that he knew that the cylinder was revolving right behind the door. Upon being asked if he would have put his hand into the door if he had known it

was open, he answered, "I don't guess I would," giving, as a reason, that "a man would be crazy to stick his hand in a hole, if he didn't know anything about it." He also testified that he knew that if the door was closed it was safe to put his hand in there; stating, "I never thought about getting my hand in there at the time, or I might have looked more when I first put my hand in there." While he stated in general terms that he did not know it was dangerous until he had his hand caught, and that he never heard of anybody being hurt in that way by the machine, it is apparent, from all the testimony, that he must have known there was danger attending the operation of the machine, whenever there was a liability of his hand going through the open door, while the cylinder was revolving. While the plaintiff was a youth of sixteen years of age, there was nothing to indicate that he did not have the intelligence of the ordinary and average youth of that age. When he had knowledge of the fact that behind the door was a revolving cylinder, with teeth or saws thereon, and that this door would be concealed by the roll of cotton falling over it, he must have known that it was dangerous to place his hand behind the cotton without making the necessary examination to ascertain whether the door was open. The door being left open was the fault of a fellow-servant, and furnished no ground for a recovery. The operation of the machine with the door open and covered by the cotton brought about one of the risks assumed by the plaintiff when he entered the service of the company for the purpose of operating the machine; and having full knowledge of the dangerous character of the machine in this condition, the fact that he received the injury furnished no ground of liability against the defendant. The judge should have granted a new trial, upon the ground that the verdict was without evidence to support it.

*Judgment reversed. All the Justices concur, except Fish, C. J., absent, and Lumpkin and Beck, JJ., who dissent.*

Lumpkin and Beck, JJ., dissenting. While the evidence contained in the record may have made a doubtful or weak case, yet, considering it altogether, we can not say that the verdict should be set aside on the ground set out in the opinion of the majority of the court. The questions of diligence and negligence, and inferences from the evidence, were peculiarly for the jury, and in our opinion it can not be said that the verdict was without evidence to support.

it, especially a second verdict approved by the presiding judge. Whether there was error in any of the charges excepted to we do not discuss, as the majority of the court base their decision solely on the ground that the verdict was without evidence to support it.