### 386.  BUSH *v.* WEST YELLOW PINE COMPANY.

**1.** In a suit by a servant against his master on account of injuries received through a defective instrumentality furnished to the former by the latter, the servant's knowledge, actual or constructive, of the defect may usually be considered in establishing either or both of two defenses open to the master; the one, assumption of the risk by the servant; the other, contributory negligence on the servant's part.

**2.** While ordinarily the law reads into contracts of employment an agreement on the servant's part to assume the known risks of the employment, so far as he has the capacity to realize and comprehend them, yet this implication may be abrogated by an express or implied contract to the contrary; if the servant complains to the master that the instrumentality appears to be dangerous, and thereupon the master commands him to proceed with the work and assures him there is no danger the law implies a quasi new agreement whereby the master relieves the servant of his former assumption of the risk and places responsibility for resulting injuries upon the master.

**3.** "If the plaintiff by ordinary care could have avoided the consequences to himself caused by the defendant's negligence, he is not entitled to recover." The servant by continuing to work after knowledge that the instrumentality is dangerous may defeat his case on the theory that such conduct is within the rule just stated; but the command of the master and his assurances of safety may be shown by the servant as a circumstance tending to excuse him from the exercise of that caution which otherwise would lawfully be expected of him. Unless the exposure to the danger is obvious and rash, the question whether the servant under the circumstances has been guilty of a breach of due care is for the jury.

**4.** The court erred in sustaining the demurrer to the plaintiff's petition.

Action for damages, from city court of Valdosta—Judge Hansell presiding.    January 30, 1907.

Submitted June 20,—Decided July 10, 1907.

*Woodward & Smith, G. A. Whitaker,* for plaintiff.

*W. E. Thomas,* for defendant.

POWELL, J. This case comes to us upon the sustaining of a demurrer to the plaintiff's petition. The allegations of the petition as amended are, that the plaintiff was employed as a servant of the defendant, in loading cars with heavy lumber. He was unskilled and inexperienced in his work, and unfamiliar with the use of the appliances furnished. This fact was known to the defendant. Pieces of timber called "jumpers" were furnished, with which the lumber was to be slided and loaded. The plaintiff called the attention of the defendant's superintendent in charge of the work to the fact that these "jumpers" did not appear to be of sufficient size and strength to withstand the strain upon them, and also told him that he (the plaintiff) was unfamiliar with the character of the work and the sufficiency of the appliances; the superintendent told him that he (the superintendent) knew his business, that the "jumpers" were properly adjusted and were all right and perfectly safe, that there was no danger, and ordered plaintiff to go ahead with the work. Relying upon these assurances plaintiff continued in the work. As a matter of fact the "jumpers" proved to be too short, and under the strain gave way; and as a result a piece of timber fell upon plaintiff and injured him.

1. The servant's knowledge, actual or constructive, of the dangerous condition of an instrumentality furnished him by his master becomes an important matter of investigation, from two distinct phases of the case, when he has been injured through that instrumentality and attempts to hold the master responsible for the injury; first, it may be considered in relation to his assumption of the risk, a matter included by implication in the contract of employment; and then in relation to the question of his contributory negligence. These two aspects are sometimes confounded, but they are distinct. Every student of the law of master and servant recognizes the correctness of Labatt's statement (M. & S. §1): "The doctrines which define the extent of a servant's right to recover damages for personal injuries received in the course of his employment represent, broadly speaking, the results of a compromise between the principle that a servant agrees to assume all the risks incident to the work undertaken by him, and the principle that a master is answerable for the consequences of any negligent acts which may be committed by himself or his agents. In the last analysis, therefore, every problem in the law

of employer's liability consists essentially in the determination of the question whether, the facts under review shall be controlled by the one or by the other of these principles." As a part of the compromise referred to, the law reads into every contract of employment a prima facie agreement on the servant's part that he assumes all the known risks of the employment so far as (his mental and physical development considered) they are within his capacity to comprehend; and also that he will use a corresponding due care and diligence to become informed of and to understand such other risks as are not immediately known and comprehended. This element of assumption of risk may therefore, in a suit by the servant against the master for personal injuries, be considered as a matter of contract, whereby, if it be applicable under the particular facts of the case, the master escapes civil responsibility, notwithstanding he would otherwise be liable; just as in a suit ex delicto against a carrier for a breach of its public duty to safely carry goods a special contract of carriage may be shown by the carrier to limit his liability. Thus the servant's knowledge of a defect in an instrumentality furnished by the master is a relevant matter of investigation, as tending to show that as to such defect he has assumed the risk; but it is also relevant upon the other phase of the case, that which relates to his contributory negligence. Since no plaintiff can recover for an injury of which his own negligence is the proximate cause, or which he could have avoided by the exercise of ordinary care, it frequently becomes a matter of defense to the master that the servant's exposure of himself to a known danger amounted to a failure to exercise due care, or amounted to contributory negligence. Thus, by viewing the element of the servant's knowledge in separate aspects, we shall the better be able to see the particular effect to be given to the insertion into the case of the new elements of a direct order of the master and of his assurances that the work may be safely done with the instrumentalities furnished.

2. Now, since the assumption of risk is a contractual result, it may be varied as any other term of the contract might be. For instance, it would be competent for the master and the servant to make an express agreement that the servant should not assume any of the risks of the employment, and such a contract would be enforced by the court; that which otherwise would be implicit

yields to that which has become explicit to the contrary. Not only may terms which the law would ordinarily imply into a contract be varied by express agreement to the contrary; but also, where the circumstances warrant it, the original implication may cease and new and distinct terms may be implied. Even express terms may sometimes be subsequently varied by implication. Our Civil Code, § 3642, upon the subject of mutual temporary disregard of contract, is an express recognition of this principle. So, although primarily the servant contracts to assume the risks of the character we have been discussing, still, pending the course of the employment, transactions may occur between the master and servant wherefrom the law will imply a quasi new agreement as to this matter, and will hold that the master has implicitly agreed to release the servant from his promise to assume the risk. To make the specific application, the servant, recognizing that the risk is on himself, says to the master, "This instrumentality furnished by you to me is unsafe;" the master replies, "Use it; it is safe," or "Use it temporarily, and I will repair it and make it safe;" the servant obeys the order and is injured. What effect will the law give to such transactions? In the first, where the master says "it is safe," the law will construe these words as such a warranty that a breach of it will release the servant from the assumption of the risk. In the other case, where the master says, "Use it; I will repair it and make it safe," the law implies an agreement on the master's part that the temporary use pending the time necessary to get the repairing done shall be at his risk, and not at that of the servant, who has complained of the instrumentality. Just here the quotation from Cooley on Torts (2d ed.), § 559, reproduced with approval in the case of *Cheeney* v. *Ocean Steamship Co., 92 Ga.* 731, is directly in point: "If the servant, having a right to abandon the service because it is dangerous, refrains from doing so in consequence of assurances that the danger shall be removed, the duty to remove the danger is manifest and imperative, and the master is not in the exercise of ordinary care unless or until he makes his assurances good. Moreover, the assurances remove all ground for the argument that the servant, by continuing the employment, engages to assume its risks. So far as the particular peril is concerned, the implication of law is rebutted by the giving and accepting of the assurance; for nothing is

plainer or more reasonable than that the parties may and should, where practicable, come to an understanding between themselves regarding matters of this nature." See also Labatt, M. & S. §260.

3. Viewed from the standpoint of the servant's contributory negligence, the master's direct command to use the instrumentality, and his assurance that it is safe, stand in this relation to the servant's right to recover: the law recognizes that under normal circumstances the knowledge and means of knowledge possessed by the servant are inferior to those possessed by the master; and the former is, as a general rule, justified in relying upon any express statement made by the latter in respect to the extent* of the danger of the employment; and in view of this disparity of information an assurance of safety, or a specific order, may be regarded as having had the effect of lulling the servant into a feeling of security, and as having given him good reason for relaxing that vigilance for his own safety which he otherwise would have exercised; and it is therefore usually a question for the jury whether such command and such assurance do not operate to relieve the servant from an imputation of contributory negligence or failure to use due care, which otherwise would be imputed to him. Labatt, M. & S. §§407, 440, 451. "The servant does not stand on the same footing with the master. His primary duty is obedience, and if, when in the discharge of that duty, he is damaged through the neglect of the master, it is but meet that he should be recompensed." Patterson v. Pittsburgh & C. R. Co., 76 Pa. St. 389 (18 Am. R. 412). "A prudent man has a right, within reasonable limits, to rely upon the ability and skill of the agent in whose charge the common master has placed him, and is not bound at his peril to set his own judgment above that of his superior." See Indiana Car Co. v. Parker, 100 Ind. 181; Shortel v. St. Joseph, 104 Mo. 114, 16 S. W. 397, 24 Am. St. R. 317; Hissron v. Denver R. Co., 7 Utah, 503; 27 Pac. 728; Kain v. Smith, 89 N. Y. 375; Connally v. Poillon, 41 Barb. 366. The Supreme Court of Massachusetts, in the case of McKee v. Tourtellotte, 167 Mass. 69, 44 N. E. 1071, 48 L. R. A. 542, expresses the idea thus: "When we say that a man appreciates a danger, we mean that he forms a judgment as to the future, and that his judgment is right. But if against this judgment is set the judg-

ment of a superior,—one, too, who from the nature of the callings of the two men, and of the superior's duty, seems likely to make the more accurate forecast,—and if to this is added a command to go on with his work and to run the risk, it becomes a complex question of the particular circumstances whether the inferior is not justified, as a prudent man, in surrendering his own opinion and obeying the command. The nature and the degree of the danger, the extent of the plaintiff's appreciation of it, and the exigency of the work, all enter into consideration, and no universal rule can be laid down." In the footnote to the case just cited, as it is reproduced in 48 L. R. A. 543, is a lengthy citation of authorities supporting this proposition. This court, in the case of *Southern Cotton Oil Co.* v. *Gladman,* 1 *Ga. App.* 259, 58 S. E. 249, and the Supreme Court in *Moore* v. *Dublin Cotton Mills,* 127 *Ga.* 609, 56 S. E. 839, have recently discussed the effect of a direct order of the master as tending to relieve the servant from the exercise of that degree of caution which would lawfully be expected of him in the absence of such a command. Of course the servant is only the more excusable for relying upon such an order when it is accompanied by an assurance of safety.

4. It is actionable negligence for the master to order his servant to work with an unsafe instrumentality; an assurance of safety coupled with the order not only aggravates the master's negligence, but also relieves the servant from the assumption of the risk; the assurance of safety likewise makes the question of the servant's contributory negligence one for solution by the jury, unless the danger be so obvious that to undertake to encounter it amounts to plain rashness. The master's command and assurance of safety to the servant prevents the former escaping liability on the theory that the latter has assumed the risk; it is for the jury to say whether the servant's conduct in continuing to work in the light of his knowledge of the danger, even after the assurance of safety is given due weight, was or was not negligence; for a person who has failed to exercise ordinary care to protect himself can not recover. This is a maxim of the law applicable to all suits predicated upon negligence, and is wholly independent of the question as to who has assumed the risk as a matter of contract. This is a jury question which the court did not have the power to determine on demurrer.                    *Judgment reversed.*