## FREEMAN v. SAVANNAH ELECTRIC COMPANY.

In an action for damages against an electric street-railway company, by a motorman, on account of personal injuries, the petition alleged as follows: While operating a car of the defendant, he discovered that the brake was out of order and would not catch. He telephoned to the day foreman to furnish him with another car, stating the defective condition of the one in use. The foreman promised to immediately substitute another car for the one which the plaintiff was operating, but three hours and a half elapsed before this was done. In consequence of the defective condition mentioned, the plaintiff was compelled to exert all of his strength and to throw his weight upon the brake, in order to stop the car. As a result of this overexertion he was afflicted with a hernia. *Held*, that the petition was properly dismissed, on general demurrer.

Argued January 7,—Decided March 28, 1908

Action for damages. Before Judge Cann. Chatham superior court. March 19, 1907.

J. W. Freeman brought suit against the Savannah Electric Company, alleging, in brief, as follows: He was a motorman employed by the defendant, and was engaged in running one of its cars. A brake which he was using as motorman was out of order

on account of the "shoe" being worn out, so as not to catch. He was not aware of this defect until after he started to work on the day of the occurrence involved in the suit, at 2:30 o'clock p. m., and only discovered the defective condition of the brake after he had commenced working on the car and after he had applied the brake and found that it would not catch. As soon as he discovered this condition he telephoned to the day foreman to furnish him another car, stating the defective condition of the one on which he was at work. The foreman promised to substitute another car immediately, but it was three and a half hours before the demand was complied with. In consequence of this defective condition, the plaintiff was compelled to exert all his strength and throw not only his body, but his entire weight, upon the brake, in order to stop the car. This exertion on his part resulted in double hernia, which he discovered that evening upon going to a surgeon after ceasing work. He was unable to work any longer as a motorman; and he is now wearing a double truss. He is permanently disabled, and is unable to do any work requiring the exercise of physical strength. The injuries sustained by him were due entirely to the carelessness and negligence of the defendant, its officers, agents, servants, and employees, in permitting the use of said car, the machinery of which was defective and not in a condition to be safely operated, and in failing to furnish another car promptly when requested to do so. He had no knowledge of the defect until he commenced running the car, and not being a surgeon, and desiring only to serve his company to the best of his ability in an emergency which he could not have foreseen and could not remedy, it was therefore impossible for him to have apprehended such a result to himself. The defect was known to the defendant, or should have been known, by the exercise of reasonable care and diligence, before the car was sent out on the road, and it was known to the defendant by information which the plaintiff sent directly to the company's agent, and therefore the injuries sustained by the plaintiff were, upon his part, wholly without fault. The plaintiff sued for damage consisting in great pain and suffering which he has undergone, and laid his damages at $5,000. The petition was dismissed on general demurrer, and the plaintiff excepted.

*Twiggs, Oliver, Gazan & Oliver,* for plaintiff.

*Osborne & Lawrence,* for defendant.

LUMPKIN, J.　(After stating the foregoing facts.)

This case comes before us as an exception to the dismissal of an action for damages, on general demurrer.　While negligence, as a question of fact, under the evidence, is for the determination of the jury, if a prima facie case is made out, yet whether a petition on its face sets out a cause of action must be determined by the court, if a demurrer is interposed.　*Hill* v. *Louisville & Nashville R. Co.,* 124 *Ga.* 243 (52 S. E. 651, 3 L. R. A. (N. S.) 432).　The general rules in regard to the duty of a master to use care in furnishing his employee with reasonably safe machinery are stated in the Civil Code of 1895, §§ 2611, 2612.　The former section declares that the master is bound to exercise ordinary care in furnishing machinery equal in kind to that in general use, and reasonably safe for all persons who operate it with ordinary skill; and that, if there are latent defects in machinery, or dangers incident to an employment, unknown to the servant, of which the master knows, or ought to know, he must give the servant warning in respect thereto.　The latter section provides, that "A servant assumes the ordinary risks of his employment, and is bound to exercise his own skill and diligence to protect himself.　In suits for injuries arising from the negligence of the master in failing to comply with the duties imposed by the preceding section, it must appear that the master knew or ought to have known . . of the defects or danger in the machinery supplied; and it must also appear that the servant injured did not know and had not equal means of knowing such fact, and by the exercise of ordinary care could not have known thereof."　There is no question of latent defects here.　Nor, as will appear hereinafter more fully, was it a case raising the question, as one of fact, whether the danger was such as the servant did not know and had not equal opportunity with the master for knowing.　The plaintiff alleged that he knew of the defect, gave notice of it to the defendant, and asked to be furnished another car.　Ordinarily, although a defect in a machine may be known to the servant, if the master promises to remedy it, or to supply a different machine, and directs the servant to proceed with its use, this takes the case out of the operation of the general rule, which declares as a matter of law, on the doctrine

of assumption of risks, that a servant who knowingly uses a defective and dangerous machine and is injured thereby can not recover damages from the master. The servant may often rely on such assurance, and continue to use the machine, at least for a reasonable time and with due care, while awaiting the remedying of the defect; and such continued use will not of itself necessarily prevent a recovery. So far as the particular peril is concerned, the implication of law of engagement by the servant to assume the risk is rebutted by the giving and accepting of the assurance. *Cheeney* v. *Ocean Steamship Co.,* 92 *Ga.* 726, 731 (19 S. E. 33, 44 Am. St. R. 113). The danger, however, of even temporarily continuing to use the machine may be so obvious that no man of ordinary prudence would proceed on the expectation or promise of a future remedy; and the defense of negligence on the part of the servant in continuing in obvious and imminent danger, or in the manner of using the defective machine, may arise. If the master is negligent, the servant would still be prevented from recovering, if by the use of ordinary care he could have avoided the consequences of the defendant's negligence, and failed to do so.

Reduced to its simplest form, the plaintiff alleged, that, while operating a car of the defendant, he discovered that the brake was out of order and would not catch; that he telephoned to the day foreman to furnish him another car, stating the defective condition of the one in use; that the foreman promised to immediately substitute another car for the one which the plaintiff was operating, but three hours and a half elapsed before this was done; that, in consequence of the defective condition mentioned, the plaintiff was compelled to exert all of his strength and to throw his weight on the brake in order to stop the car; and that, as a result of this exertion, he was later afflicted with hernia. It may be doubted whether the allegation in regard to the foreman was sufficient to show that he was the alter ego of the defendant, and, therefore, whether his promise was shown to be the promise of the master; or whether the mere allegation that a new car was not substituted, for three hours and a half, after notice was given to the foreman, was a sufficient allegation to show that it could or ought to have been furnished sooner, or that there was any negligence on the part of the master in that regard. Moreover there was no distinct allegation that the car operated by the plaintiff

was one carrying passengers, or that there were any persons either boarding the car or leaving it, rendering it necessary to stop at any point, or what stops were required, or whether any were made, or why. We may surmise that an electric car would probably not run continuously for three hours and a half without stopping, and that this was perhaps a car carrying passengers, some or all of whom would likely desire to alight in less time than that mentioned; but there is no allegation on the subject. There may be cars on an electric-railway line which are not used for the carrying of passengers, but to carry sand for use on the track, materials, or tools for construction or repairs, or for other purposes. This is not a case of a collision with another car or with some person or thing on the track, resulting from a defective brake; nor did the injury result to the plaintiff by being struck by the brake, owing to its defective condition, or even from any slipping or falling caused by irregular or dangerous action of the brake; nor was there any allegation of an emergency arising either from duty or danger, and requiring the plaintiff to overexert himself. He merely found the brake out of order, and, after notifying the plaintiff's foreman and being informed that another car would be furnished, he proceeded to overtax himself at the brake for three hours and a half, with full knowledge of the condition of the machinery. There is no allegation that the defendant knew or had reason to believe that he was thus overstraining himself; and it would seem patent that his opportunity for knowing that fact was better than that of the defendant. He does not appear to have made any further complaint, and if he had no reason to anticipate that the muscular force which he was exercising might prove injurious to him, and was not negligent in thus acting, can it be assumed that the defendant was culpably negligent in regard to his overexertion, although it occurred in connection with a defective brake? The promise of the master to repair or replace a defective machine will not excuse the employee from the exercise of ordinary care in its use before the defect is remedied; and his knowledge of the condition of the machine is to be considered in connection with what ordinary care requires to be done. Apparently the injury resulted from this continued action on the part of the plaintiff after knowledge of the facts.

In *Worlds* v. *Georgia R. Co.*, 99 *Ga.* 283 (25 S. E. 626), a coal

car became derailed, and the plaintiff and other employees were ordered by the defendant's yardmaster to carry cross-ties, which were about one hundred yards off, for the purpose of putting the car back on the track. The plaintiff alleged, that he was required by the yardmaster to carry ties without assistance; that he complained that they were too heavy for one man to carry; that the yardmaster ordered him to proceed, emphasizing the command with an oath; that, knowing that his daily bread depended upon his labor, and fearing that unless he obeyed the order so given he would be discharged, and wholly ignorant of the serious result that might arise from carrying the cross-ties, he went to work under the order, and as a result wrenched and strained his back. The case was dismissed on demurrer, and the judgment was affirmed. It was said that "if he misconceives the amount of physical strength to be so exerted, and overstrains himself in lifting the tie and is thereby injured, the master is not liable," although the employee acted under orders from a superior. On the general subject see Labatt on Master and Servant, §§418, 425, 432; Illinois Steel Co. v. Mann, 170 Ill. 200 (40 L. R. A. 781, and note, 48 N. E. 417, 62 Am. St. R. 370); Brownfield v. Hughes, 128 Penn. St. 194 (15 Am. St. 667, 18 Atl. 340); Gulf, Colorado and Santa Fe Ry. Co. v. Brentford, 79 Tex. 619 (23 Am. St. R. 377, 15 S. W. 561); Roux v. Blodgett and Davis Lumber Co., 85 Mich. 519, (48 N. W. 1092, 13 L. R. A. 728, 24 Am. St. R. 102); Meador v. Lake Shore etc. Ry. Co., 138 Ind. 290 (37 N. E. 721, 46 Am. St. R. 384); Erdman v. Illinois Steel Co., 95 Wis. 6 (59 N. W. 993, 60 Am. St. R. 66, and note); Wood's Master and Servant (2d ed.), §378; Musser-Sauntry etc. Co. v. Brown, 126 Fed. 141, 143-4 (61 C. C. A. 297); Bush v. West Yellow Pine Co., 2 Ga. App. 295 (58 S. E. 529). *Judgment affirmed. All the Justices concur.*

ATKINSON, J., I concur in the result reached in this case, but not in all of the reasoning in the opinion.

