### 1804.   SHUE *v.* CENTRAL OF GEORGIA RAILWAY CO.

1. Where a servant knows before he enters service, or discovers afterwards, that an instrument is unsafe, and makes complaint to the master of this fact, and is directed by the master to use the unsafe instrument, and does so, relying upon the promise of the master to furnish him with a safe instrument, the assumption by the master of the increased risk to the servant in the use of the unsafe instrument will continue until the master fulfils his promise, or notifies the servant of his unwillingness or inability to do so, or until such length of time has elapsed as would, under all the facts and circumstances of the particular case, make it unreasonable for the servant to rely upon the promise.
2. The allegations of the petition pertinent to the foregoing principles of law were sufficient to go to the jury, and the court erred in sustaining the demurrer.

Action for damages, from city court of Macon—Judge Hodges. March 6, 1909.

Argued May 20,—Decided October 5, 1909.

*Robert L. Berner, Tomlinson Fort,* for plaintiff.

*Wimberly & Jordan,* for defendant.

HILL, C. J.   The petition in this case was dismissed on general demurrer, and the plaintiff excepts.   The allegations of the petition, in substance, are as follows: Petitioner was a machinist by trade and was employed in that capacity by the defendant company on November 2, 1908, in its shop in the city of Macon.   On or about April 3, 1908, when first employed by the defendant, he was assigned to work under the orders and instructions of a foreman, who was in sole charge of the department where the plaintiff was at work.   A short while after his employment he was instructed, among other things, to drive the link bushing out of the links, and, in accordance with the instructions of his foreman and with the custom prevalent in the shop where he was at work, he was required in this particular task to use a case-hardened bolt and a hard hammer.   He informed the foreman that the proper tool with which to do this particular work should be made out of soft material, either iron or soft steel, and requested of the foreman that he be furnished with tools of this character, but the foreman replied that they did not have time to make such tools, and that he would have to use the old tools until the proper tools could be made.   On account of this promise and in expectation that proper tools would be furnished him, he continued under the direct orders of his foreman to use case-hardened tools.   On three separate occasions he called the attention of his foreman to the fact that a case-hardened tool was not the proper tool with which to do the work, and requested to be furnished with a proper tool, and in each instance the foreman promised that proper tools would be made; and, in expectation that proper tools would be furnished him, he continued to work with the tool with which it was customary in the shop to do the work.   The case-hardened tool is not necessarily and not always dangerous to work with, but is liable at times to scale off and the particles thus scaled off are liable to fly into the eyes of the workman, but this does not always happen; and plaintiff continued to work with the case-hardened tool, expecting that proper tools would be furnished to him.   On November 2, 1908, while engaged in driving out the link bushings with the case-hardened tool, a small piece of iron scaled off the tool and flew into his right eye, causing him eventually to lose the

sight of this eye. He alleges that he was without fault; that he did not detect any flaw in the tool before using it, and was performing his task in the regular way and with due regard to the protection of his person in the use of the tool which had been furnished him. He charges that the defendant was negligent in not providing a proper tool with which he could do the work assigned to him; that the defendant was also negligent in not providing a proper tool with which to do the work after it was notified of the unsafe character of the tool furnished him, and that the defendant was negligent in requiring and directing him to continue to work with the case-hardened tool and hammer, and in failing to furnish him, as it had promised to do, with proper tools with which to do his work. By an amendment it was alleged that the foreman was the employee intrusted by the defendant with the duty to give the plaintiff safe tools with which to work, and he had asked this foreman for safe tools; that the plaintiff proceeded to work with the tools in use by the company, under the orders of the foreman, and did so with extreme caution and care; that this foreman was an incompetent servant, and was not capable of properly attending to the duties entrusted to him, of which the defendant was aware and of which the plaintiff was ignorant, and that the defendant was negligent in entrusting such foreman with the performance of the duties assigned to him.

Are the allegations of the petition sufficient to entitle the plaintiff to go to the jury? After giving to them very careful consideration, we have reached the conclusion that although the case is quite a close one, there is enough in the allegations to have authorized their submission to the jury. It is well settled that where an employee, when he enters upon his employment, knows, or afterwards discovers, that the appliance or machinery which he is called upon to use is defective or dangerous, and continues his employment without objection, he is deemed to have assumed the risk of the danger then known or discovered. It is clearly as well settled, however, that if the servant, having knowledge of the defect in the machinery or instrumentality with which he is called upon to work, gives notice thereof to the master, and is promised that such defect shall be remedied or a safe instrumentality furnished, his subsequent use of the machinery or instrumentality in the belief, well grounded, that it will be put in proper condition or a safe instru-

mentality furnished to him within a reasonable time, does not necessarily or as matter of law make him guilty of contributory negligence. It is for the jury to determine whether he was in the exercise of due care in relying upon such promise and in using the machinery or instrumentality after knowledge of its unsafe or defective condition or character. Hough v. Texas & P. R. Co., 100 U. S. 213 (25 L. ed. 612). The rule has never been better stated than by Cooley in his work on Torts (2d ed.), §555, as approved by our Supreme Court in the case of *Cheeney* v. *Ocean Steamship Co.*, 92 *Ga.* 731 (19 S. E. 35, 44 Am. St. R. 113) : "If the servant, having a right to abandon the service because it is dangerous, refrains from doing so in consequence of assurances that the danger shall be removed, the duty to remove the danger is manifest and imperative, and the master is not in the exercise of ordinary care until he makes such assurance good. Moreover, the assurances remove all ground for the argument that the servant, by continuing the employment, engages to assume its risks." See also *Freeman* v. *Savannah Electric Co.*, 130 *Ga.* 449 (60 S. E. 1042) ; *Bush* v. *West Yellow Pine Co.*, 2 *Ga. App.* 295 (58 S. E. 529) ; 1 Labatt on Master and Servant, §§418-429.

The principle above announced is not controverted; but it is claimed that it must be accepted with the qualification that the servant can rely upon the assurances or promises of the master only for a reasonable time, and that if the master fails after a reasonable time to remedy the defect of the machinery or to furnish a safe instrumentality, and the servant still continues to work with the unsafe machinery or instrumentality, with knowledge of its condition or character, he reassumes the risk, and if thereafter he is injured, he can not recover damages. It is claimed in this case that the unsafe character of the tool which the servant was ordered by the foreman to use was discovered by him when he began his employment in the early part of April; that he then called the attention of the foreman to its unsafe condition, and received from him the promise or assurance that a safe tool would be furnished, and that he was directed to continue his work until it was furnished, and to use in the work the tool that was commonly used by the defendant; and that the plaintiff, after he had received this promise, continued to use this unsafe tool until he was injured on November 2, a period of at least six months, and that this was such an unreasonable

length of time for the fulfilment of the promise of the foreman to furnish a safe tool as to put the plaintiff on notice that the defendant did not intend to do so, and that the plaintiff was not warranted in relying further upon the defendant's promise, and that, in continuing the use of the unsafe tool for such a length of time, he reassumed the risk of its use. It will be seen that the allegations are that the plaintiff complained three different times to the foreman of the unsafe character of the tool in question. It is not stated at what intervals of time these different complaints were made. No more specific allegations were called for by special demurrer, and the question as to when these three complaints were made is without limitation as to what proof might have been submitted on this subject. The permissible length of the period in which a servant can continue his use of an unsafe instrumentality is primarily a question for the jury, and it is to be determined by the facts of each particular case, as this relates to the question of contributory negligence rather than to the assumption of the risk. *Bush* v. *West Co.,* supra. Where the danger is great, the length of time should be proportionately short; where the danger is not great, the length of time should be proportionately longer. The question is whether a reasonably prudent man would in the particular case continue the work with the particular instrumentality. This question can rarely be determined as one of law, but is peculiarly one of fact for the jury. Where the master's attention is called to a defective instrumentality, and he promises the servant to remedy the defect, at the same time directing the servant to continue to work with the defective instrumentality, it would seem that the assumption of the risk by the master should continue until he fulfils his promise or notifies the servant of his inability or unwillingness to do so, or until such time has elapsed as would under all the attendant circumstances make it unreasonable for the servant to rely upon the promise; and it is for the jury to say whether or not such time had elapsed as would preclude all reasonable expectation that the defect would be remedied. 1 Labatt on Master and Servant, §429; Taylor *v.* Star Coal Co., 110 Iowa, 40 (81 N. W. 249) ; Cansell *v.* Hall, 145 Mass. 468 (14 N. E. 530). Now, in this case, the allegations as to the unsafe character of the tool that the plaintiff was directed to use show that the tool was not necessarily always dangerous to work with; that the fragments or scales from the bolt were only

liable at times to fly off, and were dangerous only when they struck the employee in the eye, and that this did not often happen. It is fairly inferable, from the allegations of the petition, that the plaintiff was called upon to work with this tool only occasionally; that it was only a part of his work and that the hardened tool was the one that was customarily used. Taking all these facts into consideration we conclude that in spite of the delay in the fulfilment of the promise made to the plaintiff by the master, it may still be an open question, to be closed by the jury, whether he was not justified in continuing to perform his work. The existence of a doubt in our own minds strengthens us in the conclusion that the solution of this doubt is an issuable fact. Courts are very reluctant to declare, as matter of law, when the servant should cease to rely upon the promise of his master to protect him against danger of which he has made complaint. Indeed, they rarely undertake to do so, but almost universally refer the question to the jury, to be determined in the light of all the attendant facts and circumstances, and we think that the court is never warranted in depriving a servant of an investigation by the jury, unless the facts and all reasonable deductions therefrom present clearly and manifestly but one possible conclusion. Even where the courts in rare instances have undertaken to construe the servant's continuance of work after he has made complaint and after the master has promised to guard him against danger, they have given to the servant's conduct a most lenient construction; especially has this been true where the servant's conduct in remaining at his work is dictated by a sense of duty to the master or to the public. But in some cases the servant has been allowed to recover where there was no special reason for him to continue to rely upon the promise of the master, and nothing to indicate that either the master or the public would be prejudiced by his discontinuance of work. 1 Labatt, Master and Servant, §430 and cases in notes. It may be that the coercive influence of necessity operating upon the servant has not been without its effect upon the judicial mind in arriving at the liberal and generous construction of the servant's act in continuing his work, for we must recognize the fact that the large majority of railroad employees are toiling for what Carlyle calls the "altogether indispensable for daily bread;" and that it is a serious matter to surrender an employment, on the continuance of which depends not only his own support, but that

of his family. Whatever may be the motive for the liberal judicial construction of the servant's conduct in continuing his work above alluded to, the writer of this opinion is in the fullest sympathy with it. The doctrine that contributory negligence or assumption of risk on the part of the servant must in any event, whatever its degree and whatever its relative proportion to the negligence of the master, deprive him of the right to recover damages, is not in harmony with an enlightened sense of justice and humanity, and it should be construed liberally in behalf of the servant. The retention of the harsh rule of the common law as to servants and its statutory modification as to others is supported by neither reason nor justice.

*Judgment reversed.*