## SOUTHERN RAILWAY COMPANY v. TAYLOR.

1. A servant assumes the ordinary risks of his employment, and is bound to exercise his own skill and diligence to protect himself. Civil Code, § 3131; *Stewart* v. *Seaboard Air-Line Ry.*, 115 *Ga.* 624 (41 S. E. 981); *East Tennessee R. Co.* v. *Reynolds*, 93 *Ga.* 570 (20 S. E. 70).

(a) In order for a servant to recover for an injury on the ground that it resulted from his compliance with a direct order of his master, or his master's representative, the servant must show that the order was a negligent one under the circumstances. If the order was negligent and the servant knew of the peril of complying with it, or if he had equal means with his master of knowing of the peril, or by the exercise of ordinary care might have known thereof, then he can not recover for an injury received in complying with the order. 1 Labatt on Master & Servant, § 433 et seq.; *Central R. Co.* v. *Kenney*, 58 *Ga.* 486; *Worlds* v. *Georgia R. Co.*, 99 *Ga.* 283 (25 S. E. 646); *Daniel* v. *Forsyth*, 106 *Ga.*

568 (32 S. E. 621); *Hendrix* v. *Vale Royal Co.*, 134 *Ga.* 712 (68 S. E. 483), and citations.

2. Civil Code sections 3130 and 3131, in regard to the master's duty to employ competent servants and furnish proper machinery, were not applicable in their entirety to the facts of this case; but as the judgment must be reversed on another ground, it is unnecessary to decide whether the giving of such sections in charge to the jury would require the grant of a new trial.

FEBRUARY 17, 1912. REHEARING DENIED FEBRUARY 29, 1912.

Action for damages. Before Judge Fite. Gordon superior court. December 5, 1910.

Taylor sued the Southern Railway Company and Avery for personal injuries. There was a verdict for the plaintiff against both defendants, whose motion for a new trial being overruled, they excepted. Upon the trial the evidence submitted in behalf of the plaintiff tended to show the following facts: The plaintiff was 45 years old at the time he was injured, was a bridge carpenter, and had been engaged in work as such for off and on about 20 years. Avery was superintending and directing the work in reconstructing a trestle on the railway company's road. The plaintiff was working on the trestle with others, under Avery. A plank was needed at the place where the work was being done by the plaintiff and others. He testified as follows: "Mr. Avery told us he would look us up one; so he went off, and me and several went on back with him, and he pointed this plank out to us and told us to go to the end of the trestle and get a rope and tie to it and lift it to the top so we could put it down across that. It was Mr. Avery that directed us to go and get this particular plank; to get it we had to go down there to it and tie a rope to it. I reckon it was 3 or 4 feet below the top of the trestle to where this plank lay, somewhere along there below the top surface. It was on the side of the bent at the outside of the ballast. . . In getting down off of the bridge, I got down right here on this cap [referring to a model of the trestle], and had my right side, my face, turned towards the trestle, you know, and caught around the tie and cap too, and put my right foot on the right edge of the plank, and then put the other one down, you know; straightened up to get in position on the plank, and it turned with me and threw me. What caused the plank to turn with me was not having a full bearing; did not have enough bearing here, you know, over the plank, the width of the plank. Before I got down on it I could not see from where I was that it did

not have a full bearing; it lapped over, you know, and I could not discover it; it was standing out straight; you could not tell about it from the position I would have to get down on it. . . The plank rested on the sill and did stick out over it, and covered it. You could not see under the plank; if you was down under the plank you could tell what was under it; I could not. . . In getting down on that plank, there was no place to get down on it other than the place I did get down. I could not see any other place, and there was no other place. That was a safe place to step down upon; you know this scaffolding was the only place you could get on, and you would have to get down there to tie the rope to it. Mr. Avery told us to get a rope and get down on it; he come along ahead of us and pointed out this plank and told us, ' Here is one you can get.' He was hunting a loose plank to carry it back for scaffolding, and he told us to get ropes and tie it and move it down to the next place." A witness for the plaintiff testified as follows, in reference to the plank: "It had been there 5 or 6 days. It was not nailed. It was left there on Saturday when we quit, and it was there Monday morning. [The plaintiff was injured on Monday.] The trains passing would shake it a little. It would be bound to shake it. I don't know whether it would shake it off or not. . . I heard Mr. Avery tell Mr. Taylor to get down and tie a rope around that plank, so they could pull it up and move it to the next bent; and Mr. Taylor obeyed that order." Another witness testified: "This plank was put there for the purpose of serving on that part of the scaffolding. . . I suppose the work was done there, was the reason we were going to move that plank. . . When Mr. Taylor got down on it, I suppose he could have stepped on the cap sill instead of stepping on the plank; don't know whether he could or not. I did not see the cap. I seen the plank all right. I know the construction of it. I know that he could have stepped on the cap sill without stepping on the plank. This plank is something like two and a half feet below this top here. If you step off that point there, you have got to step around in that direction, then around and kind of under. I don't know how far it is from this top to underneath there, exactly; of course it is more inconvenient to go around down under there and get on that cap than to step on the three by ten [the plank plaintiff got on]; it necessitates some strain to step from that

point around underneath there, and on the plank. If this place had been sticking out as far as the plank, it would not have fallen. By close inspection any one could have discovered that this thing was not nailed, and that it did not stick out as far as the plank. By a casual observation I could not see it underneath there, how far it was under there." The witness had a model of the trestle before him when testifying. There was evidence showing the nature and extent of the plaintiff's injuries, the amount he was earning at the time he was injured, and his life expectancy. The defendant introduced no evidence.

*Maddox, McCamy & Shumate* and *F. A. Cantrell,* for plaintiff in error.

*Lawton Nalley* and *J. G. B. Erwin Jr.,* contra.

ATKINSON, J. (After stating the foregoing facts.) No complaint is made of any inherent weakness or other defect in the plank or the sills upon which it rested, or that the sills did not project sufficiently for the plank to have had a secure position upon them; but the whole complaint is merely that the plank, though loose, projected so far beyond the ends of the sills as to render it insecure, and when plaintiff rested his feet upon the outer edge it tilted, precipitating him and causing the injury. The plaintiff knew that the plank was not nailed, or otherwise fastened to the sills; in other words, that it was a loose plank. He saw that the ends of the sills upon which the plank rested did not extend beyond the plank; as he testified that he could not see the ends of the sills beyond the plank as he got down on it. Yet he undertook to stand on it without any effort to ascertain whether it would be safe for him to do so, notwithstanding he knew that the plank was loose and that the ends of the sills upon which it rested could not be seen beyond it. If Avery, the representative of the railway company, was with Taylor at the time the latter got down on the plank, the peril of doing so in obedience to Avery's order was no more apparent to the latter than to Taylor; and if the danger was hidden to both of them and could not have been discovered by the exercise of ordinary care, then Taylor could not recover, for he assumed the risk incident to getting on the plank. If the danger was obvious, then it was equally so to both Taylor and Avery. The plank did not constitute a part of the work planned by Avery, nor a part of the permanent structure of the trestle, but was merely a loose

plank left where a portion of the trestle had been completed. Considering the plaintiff's age, his long experience in bridge building, and his knowledge of all the circumstances of the situation at the time he got upon the plank, and applying the principles announced in the first headnote to all the facts of the case, the plaintiff was not entitled to recover.

*Judgment reversed. All the Justices concur, except Hill, J., not presiding.*