19480.   WESTERN & ATLANTIC RAILROAD *v.* EDWARDS.

DECIDED JUNE 17, 1929.

*Maddox, Maddox & Mitchell, Tye, Thomson & Tye,* for plaintiff in error.

*D. W. Mitchell, R. C. Pittman,* contra.

BELL, J.   Thomas Edwards brought suit against Western &

Atlantic Railroad for personal injuries which he received while employed by the defendant as a driller in the construction of a tunnel. Between the filing of the suit and the service of process he made a settlement with the railroad, and the case thereafter proceeded merely for the recovery of an amount for the fees of his attorneys, who were employed on a contingent basis. The trial resulted in a verdict in his favor for $300 payable to the attorneys, and the defendant excepts to the overruling of its motion for a new trial.

We think that irrespective of the settlement the defendant was not liable. The plaintiff was working as a driller in a tunnel in which dynamite was used to break up the earth and rock. When a charge of dynamite was placed and about to be shot, the workmen would leave the tunnel and go to a place of safety. After the explosion they would return for the purpose of removing the earthern matter and of putting in timbers to brace the sides and walls. According to the petition, the plaintiff's injury occurred under these circumstances: After a certain heavy explosion of dynamite one Joe Phillips, who was the foreman in charge of the work, said to the plaintiff: "Tom, you and the other fellow come here and help put this timber back," and as the plaintiff responded to this command Phillips further said, "I am going to watch it, and if it looks like anything is going to fall, I will holler, and then you fellows get back out of the way."

The petition alleged, that, although the foreman well knew that certain supports had been displaced and that others were about to fall, he yet ordered the plaintiff "to go into this place of danger;" that the plaintiff was unaware of the danger and could not have discovered the same by the exercise of ordinary care. The tunnel was made dark by smoke and poor lights, and as the plaintiff was clearing away the fallen timbers and was stooping for this purpose, rocks and timber began to fall, and the plaintiff was struck and injured thereby. The plaintiff relied upon the judgment of the foreman and his promise to give warning of any danger, and the "injury was occasioned by the fault and negligence of the defendant railroad as aforesaid and entirely without fault whatsoever on the part of the plaintiff."

Upon the question of original liability the plaintiff's testimony was as follows: "I went on back to my drill and knocking timber

loose. Mr. Phillips said, 'Tom, you and that other fellow come back and help put this timber back.' The fellow in front of me started and I started, and the timber fell, knocking me on the head, kind of addled me, knocked me around, I got straight and went on around there and went to picking up rocks, and he said, 'I will go back and holler, when I holler you all get out of the way.' I stooped over and I never heard him holler; something hit me on the foot and something on the shoulder, something, two by four, I think. When it hit me it knocked me down. I don't know whether it knocked me across the tunnel; I was kind of addled; when I come to myself they had me, going out with me. It knocked me unconscious. This man Phillips that I speak of, he was the foreman, agent of the W. & A. up there on that job, and he was the man that said this, 'Tom, you and the other fellows come here and help put the timber back,' and he was the man that said, 'I am going to watch that up there, and when I holler you all get out of the way;' and I just went on and picked up rock, and I fell; I didn't hear him holler, something hit me on the foot and shoulder, they said it was a two by four, these fellows took me out, I didn't know what it was. . . Something hit me on the head, that was the timber before that fell from the top, head and shoulder. . . I was working in a new tunnel, taking another fellow's place drilling for a few minutes, drilling to load dynamite to blast. I drilled holes and loaded that dynamite and the dynamite was set off, and all about went back to a place of safety while that was discharged. That was the custom under which I worked there in the tunnel. After the dynamite went off I would come back and begin to move the loose dirt and stuff. I had been doing that all the time since they had been building the tunnel, since I had been there, and some timber that was put in there to kind of brace the sides of the wall, so forth, while I was working in the tunnel, got knocked loose in this shot of dynamite. They had a hole drilled under that timber. That was the first one that had been shot out since I had been there. I did not go back up there and see that this timber was loose, could not see nothing for the smoke. The man did not tell me to get up there and fix some timbers that were loose. I had been drilling in a fellow's place, and he said, 'Tom, you and that fellow come over here and help put the timber back up;' the timber was shot out,

I guess. I started and he went ahead of me and the timber shot out and fell and knocked me back against another fellow. After that piece of timber fell and knocked me back I did not get up and start to go on to work, and some more fell and rock fell and hit me. I got kind of straight and went down to move some rock where they could set it back. He said, ' I am going to get back here and watch, and when I holler, you all get out of the way.' I did not hear him holler, something hit me on the head and feet. It cut a little gash on my head. That would not have prevented me from going on with my work. The thing that fell and hit me did not fall there, at another place that I went, it runs from the same beam, the same beam was loose from that one that fell, and was shot loose by the same charge of dynamite, I suppose, as the first was. . . The boss man said he would holler and for us to get out of the way. I had just stooped over. I did not hear him holler. . . I went on in after that and it fell and hit me. . . My duty in the tunnel was anything the boss told me to do. I had been working, moving stuff out of the tunnel as a laborer. . . I say the man's name was Joe Phillips, he was foreman, he was the man that was to warn me. I don't know whether he warned me or not, he backed off."

The plaintiff neither alleged nor testified to any latent defect in the place of work, and the case is made to depend upon what seems to have been regarded as a negligent order of the foreman and the failure of the foreman to keep his promise to watch and to give warning "if it looked like anything was going to fall." Certainly, in the absence of any actionable negligence on the part of the foreman, the plaintiff would be barred by the rule that the duty of the master to furnish the servant a reasonably safe place in which to work does not apply to such places as are constantly shifting and being transformed as a direct result of the servant's labor, and where the work in its progress necessarily changes the character for safety of the place in which it is performed, as it progresses. In such a case the dangers are included in the ordinary risks of the employment, and the servant, by accepting such employment, necessarily assumes them. *Holland* v. *Durham Coal &c. Co.*, 131 *Ga.* 715 (63 S. E. 290); *Thomas* v. *Georgia Granite Co.*, 140 *Ga.* 459 (79 S. E. 130).

Nothing contrary to this principle was decided in *Terry Ship-*

*building Corp.* v. *Griffian,* 153 *Ga.* 390 (112 S. E. 374), but in that case it was merely held that the facts there under consideration were not such as would justify the application of the principle; nor was there made in that case any distinction which could be made in the case at bar.

Under the facts of this case the plaintiff can not recover merely upon proof that the foreman may have given a negligent order, but the general rule is applicable that in suits for injuries arising from the negligence of the master it must appear that the servant did not know, and had not equal means of knowing, of the danger resulting therefrom, and by the exercise of ordinary care could not have known thereof. Civil Code (1910), § 3131. "In order for a servant to recover for an injury on the ground that it resulted from his compliance with a direct order of his master, or his master's representative, the servant must show that the order was a negligent one under the circumstances. If the order was negligent and the servant knew of the peril of complying with it, or if he had equal means with his master of knowing of the peril, or by the exercise of ordinary care might have known thereof, then he can not recover for an injury received in complying with the order." *Southern Ry. Co.* v. *Taylor,* 137 *Ga.* 704 (1 *a*) (73 S. E. 1055).

The plaintiff further claims that the defendant was negligent through its foreman in failing to give the promised warning, should it appear that anything was about to fall, but the principle just referred to is equally applicable to this contention. In *Hendrix* v. *Vale Royal Mfg. Co.,* 134 *Ga.* 712 (68 S. E. 483), the Supreme Court said: "In an action by a servant against a master for alleged failure of duty on the part of the latter in not giving to the servant warning of a danger incident to his·employment, it must appear that the master knew or ought to have known of the danger, and that the servant injured did not know and had not equal means with the master of knowing such fact, and by the exercise of ordinary care could not have known it. If the danger be obvious and as easily known to the servant as to the master, the latter will not be liable for failing to give warning of it." See also, in this connection, *Hagins* v. *Southern Bell Tel. &c. Co.,* 134 *Ga.* 641 (68 S. E. 428, 137 Am. St. 270, 20 Ann. Cas. 248); *Crown Cotton Mills* v. *McNally,* 123 *Ga.* 35 (2) (51 S. E. 13); *Crown Cotton Mills* v. *McNally,* 127 *Ga.* 404 (56 S. E. 452);

*Daniel* v. *Central of Georgia Ry. Co.,* 119 *Ga.* 246 (2) (46 S. E. 107); *Louisville & Nashville R. Co.* v. *Dunn,* 21 *Ga. App.* 379 (94 S. E. 661); *Williams* v. *Atlantic Coast Line R. Co.,* 18 *Ga. App.* 117 (89 S. E. 158).

It is well settled, of course, that where the master gives to the servant an order, with an express or implied assurance of safety in compliance therewith, such order and assurance when acted upon by the servant will operate to establish a quasi new agreement whereby the servant is relieved of his former assumption of risk. *Central of Georgia Ry. Co.* v. *Lindsey,* 28 *Ga. App.* 198 (1 *b*) (110 S. E. 636), and cit. However, there are not sufficient facts in the present case to render this principle applicable. The danger incident to the work of constructing the tunnel was fully recognized by all, and the order which the foreman gave to the plaintiff entailed no hazard which was not as well known to the plaintiff as to the foreman himself. The instruction complained of appears to have been a mere direction as to an ordinary detail of the work, and neither expressed nor implied any assurance of safety. Nor was there any such assurance in the mere promise of the foreman to give warning of anything that was about to fall. The plaintiff knew that he was working in a place where rock, earth, and timbers had been disturbed and loosened by a blast of dynamite, and the conditions were fully known and appreciated by him. This affirmatively appears from his own evidence in which he tells of having been struck by some object immediately preceding the more serious injury of which he complains. Notwithstanding the blow which he had just received upon the head, he went forward with the ordinary tasks, well knowing that at any moment other objects might be precipitated from the walls or overhead in the tunnel.

If there are latent defects in the machinery or place of work, or dangers incident to an employment unknown to the servant, of which the master knows or ought to know, he must give the servant warning in respect thereto (Civil Code of 1910, § 3130), but there is no duty upon the master to give warning of an obvious danger, of which the servant is fully cognizant, and in such a case any promise of warning, or any warning actually given, will be entirely voluntary and will not excuse the servant from exercising his own skill and judgment to protect himself.

Furthermore, it appears undisputed from the evidence of the foreman that he did watch and that the rock which fell and struck the plaintiff dropped from a position "of only about twelve feet up," that he (the foreman) did not "see it before it started to fall," which happened almost as quickly "as you could snap your finger, almost a sudden drop," and that he had no sufficient time within which to give any effective warning of the danger. The evidence fails to show anything to abrogate the ordinary rule as to assumption of risk, and the case is governed by the principle that the servant can not recover for injuries occasioned by a negligent order, or by the failure of the master to give warning of a danger incident to the employment, without proof that the servant did not know, and had not equal means with the master of knowing, of the consequent peril, and by the exercise of ordinary care could not have known of it.

The present case is distinguished from such cases as *Hood* v. *Atlantic Steel Co.*, 29 *Ga. App.* 457 (115 S. E. 917), and *Rabon* v. *Atlantic Coast Line R. Co.*, 37 *Ga. App.* 6 (138 S. E. 858), in that the danger was obvious and the servant either had or was charged with actual knowledge thereof.

The evidence was insufficient to show liability, and it was therefore error to refuse a new trial. It is unnecessary to pass upon the other questions raised in the motion for a new trial.

*Judgment reversed. Jenkins, P. J., and Stephens, J., concur.*