22721. HORNE *v.* ATLANTA, BIRMINGHAM & COAST RAILROAD CO.

DECIDED JUNE 13, 1933.

118

120

*J. E. Craigmiles,* for plaintiff. *Hay & Gainey,* for defendant.

BROYLES, C. J. (After stating the foregoing facts.) This case is controlled by the principle of the decisions in *Worlds* v. *Georgia R. Co.,* 99 *Ga.* 283 (25 S. E. 646), *Freeman* v. *Savannah Electric Co.,* 130 *Ga.* 449 (60 S. E. 1042), *Ayers* v. *L. & N. R. Co.,* 5 *Ga. App.* 454 (63 S. E. 530), *Whitfield.* v. *L. & N. R. Co.,* 7 *Ga. App.* 268 (66 S. E. 973), and *Pollard* v. *Southern Ry. Co.,* 8 *Ga. App.* 337 (69 S. E. 28). The petition as amended failed to show a cause of action, and was properly dismissed on demurrer.

*Judgment affirmed. Sutton, J., concurs. Guerry, J., dissents.*

GUERRY, J., dissenting. I can not concur in the opinion affirming the judgment of the lower court sustaining the general demurrer to this petition. When the plaintiff alleges that under the order of the defendant, and as a part of the work he was employed to do, he made complaint to the defendant that one man was not sufficient to lift one end of a steel rail (it also being alleged that "plaintiff was not familiar with, and had no knowledge of the ex-

treme weight of said rail"), the defendant ordered him to proceed with the lifting of the rail, telling him, "Go ahead, there is no danger, it is not going to hurt you," such allegations are sufficient to withstand a general demurrer with reference to the "assumption of risk" and made the questions involved matters for the determination of the jury. It is true that "a servant is bound to exercise ordinary care and skill in protecting himself from danger; this is true whether he be acting on his own initiative or under the direct command of his master. If the order was negligent and the servant knew of the peril in complying with it or if he had equal means with his master of knowing of the peril, or by the exercise of ordinary care might have known thereof, . . he can not recover for an injury received in complying with the order." *Central of Ga. Ry. Co.* v. *Lindsey,* 28 *Ga. App.* 198 (110 S. E. 636) ; *Southern Ry. Co.* v. *Taylor,* 137 *Ga.* 704 (73 S. E. 1055); *Hightower* v. *Southern Ry. Co.,* 146 *Ga.* 279 (91 S. E. 52, L. R. A. 1917C, 481). While it is true that the standard of diligence to which a servant is amenable and under which he is ever required to exercise ordinary care does not excuse him for actual negligence by reason of the fact that injury results from his obedience to a specific command, when it appears that he has failed to exercise ordinary care or that the risk was obvious, it is, nevertheless, true that what in a given case amounts to ordinary care is to be determined by the jury in the light of all the surrounding circumstances existing at the time of the injury, including the issuance of the command by the master to the servant.

In the case of *Western & Atlantic Railroad* v. *Edwards,* 40 *Ga. App.* 66 (148 S. E. 628), it was said: "It is well settled, of course, that where the master gives to the servant an order, with an express or implied assurance of safety in compliance therewith, such order and assurance when acted upon by the servant will operate to establish a quasi new agreement whereby the servant is relieved of his former assumption of risk. *Central of Ga. Ry. Co.* v. *Lindsey,"* supra. In the case of *Shue* v. *Central of Ga. Ry. Co.,* 6 *Ga. App.* 714 (65 S. E. 697), it was held that where a servant discovers that an instrument with which he is working is unsafe, and makes complaint to the master of this fact, and is directed by the master to use the instrument until he furnishes him with a safe instrument, the assumption by the master of the increased risk to the servant

in the use of the unsafe instrument will continue until the master fulfills his promise, or notifies the servant of his unwillingness or inability to do so, or until such length of time has elapsed as would under the facts and circumstances make it unreasonable to rely on the promise. Chief Judge Hill, in the opinion, said: "It may be that the coercive influence of necessity operating upon the servant has not been without its effect upon the judicial mind in arriving at the liberal and generous construction of the servant's act in continuing his work, for we must recognize the fact that the large majority of railroad employees are toiling for what Carlyle calls the 'altogether indispensable for daily bread;' and that it is a serious matter to surrender an employment, on the continuance of which depends not only his own support, but that of his family. Whatever may be the motive for the liberal judicial construction of the servant's conduct in continuing his work above alluded to, the writer of this opinion is in the fullest sympathy with it. The doctrine that contributory negligence or assumption of risk on the part of the servant must in any event, whatever its degree and whatever its relative proportion to the negligence of the master, deprive him of the right to recover damages, is not in harmony with an enlightened sense of justice and humanity, and it should be construed liberally in behalf of the servant. The retention of the harsh rule of the common law as to servants and its statutory modification as to others is supported by neither reason nor justice." See also, in this connection, the case of *Hood* v. *Atlantic Steel Co., 29 Ga. App.* 457 (115 S. E. 917), where it was said: "The question whether, in obeying a negligent command, the servant did or did not exercise ordinary care is a question for the jury, except in plain cases where the danger in complying therewith was obvious or it appears that the servant had actual knowledge of the unusual and unnecessary peril involved." In the case of *International Cotton Mills* v. *Webb, 22 Ga. App.* 309 (96 S. E. 16), it was said: "Among the absolute, continuous, and nonassignable duties of the master to the servant is the duty of the former to furnish the latter a safe place to work, and to refrain from giving orders which will require the servant to put himself in a position where he will be subject to risk of injury from a dangerous instrumentality." It was further said in the same case: "If the servant complains to the master that the instrumentality appears to be dangerous, and thereupon

the master commands him to proceed with the work and assures him there is no danger, then, unless the danger be so obvious and manifest that no prudent man would expose himself thereto, the law implies a quasi new agreement whereby the master relieves the servant from his former assumption of risk, and places responsibility for resulting injuries upon the master. *Bush* v. *West Yellow Pine Co.,* 2 *Ga. App.* 295 (58 S. E. 529) ; *Massee & Felton Lumber Co.* v. *Ivey,* 12 *Ga. App.* 583 (77 S. E. 1130) ; *Cherokee Brick Co.* v. *Hampton,* 16 *Ga. App.* 53 (84 S. E. 328)."

In the case of *Bush* v. *West Yellow Pine Co.,* supra, Powell, J. said: "A prudent man has a right, within reasonable limits, to rely upon the ability and skill of the agent in whose charge the common master has placed him, and is not bound at his peril to set his own judgment above that of his superior. . . When we say that a man appreciates a danger, we mean that he forms a judgment as to the future, and that his judgment is right. But if against this judgment is set the judgment of a superior,—one, too, who from the nature of the callings of the two men, and of the superior's duty, seems likely to make the more accurate forecast,— and if to this is added a command to go on with his work and to run the risk, it becomes a complex question of the particular circumstances whether the inferior is not justified, as a prudent man, in surrendering his own opinion and obeying the command. The nature and the degree of the danger, the extent of the plaintiff's appreciation of it, and the exigency of the work, all enter into consideration, and no universal rule can be laid down." In *Durham* v. *Whittier Mills Co.,* 9 *Ga. App.* 26 (70 S. E. 195), Russell, J., said: "The allegations were sufficient to withstand the general demurrer. The case alleged by the petition is that of a servant injured because his fellow laborers, in response to a direct command of the master, then and there given to do the particular thing which they did, overturned a heavy machine and threw the entire weight on him, thus injuring him. The petition sets out a cause of action, as the master, under the circumstances, would be liable, *either on the theory that the negligent order was the sole juridic cause of the injury* [italics mine], or on the theory that the negligence of the master concurred with the negligence of the servants who executed it, if, indeed, their execution of the order in the exact manner in which they were directed to perform it can be considered as negli-

gence at all." It would seem, from the allegations of the petition that the plaintiff, knowing the rail to be heavy, yet not knowing its "extreme weight," did have the right to rely on the superior judgment of the master, and it at least becomes a question for the jury to determine whether or not the danger is so obvious and the servant's acquaintanceship therewith is equal to that of the master. I think that the judgment of the lower court sustaining the demurrer to the petition should be reversed.