### 1162.   McDUFFIE *v.* OCEAN STEAMSHIP COMPANY.

1. If the nature of the master's work is complex and involves the presence and co-operation of a number of laborers, so situated that independent individual action on their respective parts would render the doing of the work unsafe, the law imposes on the master the duty of organizing and maintaining a system by which the work can be done with reasonable safety.
2. If the master chooses to leave to an employee the regulation of matters which he ought to have provided for by specific rules, such employee will be regarded as his representative, and not as a fellow servant of the laborers who do his work.
3. The courts of this State are now thoroughly committed to the proposition that any employee, regardless of rank or title, who performs with the master's consent a non-delegable duty is not a fellow servant with the laborers who do the work.
4. The giving of orders as to the system of work, even though they effect but a single particular piece of work, is a duty of the master; and is to be distinguished from the giving of work signals which merely aid the successful and satisfactory execution of the labor at hand.
5. The court erred in granting the nonsuit.

Action for damages, from city court of Savannah—Judge Freeman.  April 23, 1908.

Argued July 3,—Decided November 10, 1908.

Rehearing denied November 27, 1908.

McDuffie was employed by the Ocean Steamship Company as one of a gang of laborers engaged in trucking and loading bridge iron from the wharf of the company to certain freight cars. There were a number of similar gangs working at the same time and place. Piled upon the wharf were eight or nine pieces of the bridge iron, each about 25 feet long and weighing about 2,000 pounds. One piece had been rolled down from the pile and placed on a truck. The plaintiff and a colaborer were in the act of pushing the truck. He had his back to the pile of iron, with his legs spread somewhat apart and braced back. The remaining men of the particular gang, ten in number, were waiting to load another piece on another truck. George Knox, an employee of the company, who had general superintendence of the men and of the loading so far as this particular gang was concerned, gave the men in waiting an order to turn the second piece of iron on the pile. On account of the noise on the wharf, the plaintiff did not hear this command, but the "header" of the gang, a fellow laborer occupying somewhat the same relationship as is usually denoted by the word "boss," repeating the command, said "turn," and iron was thrown down upon the heels and legs of the plaintiff, severely injuring him. Knox's designation in the employment was "shipping clerk." He and the other shipping clerks were under the authority of a chief shipping clerk; and then there was Captain Savage, who, to adopt the language of one of the witnesses, was "the general boss over the whole business." The petition set out these facts, including the nature of Knox's duties, but not including the statement as to the existence of the chief shipping clerk and the "general boss over the whole business," and alleged that the plaintiff was injured by the negligence of the company, through its alter ego, Knox, in that he negligently ordered the second piece of bridge iron to be turned off the pile, under the circumstances, and while the plaintiff, in the conduct of his particular duty, was still in range of it. The defendant filed a general demurrer to the petition; it was overruled, and no exception was taken. The case proceeded to trial, and, the plaintiff having proved the facts stated above, the court granted a nonsuit, on the ground that Knox was only an ordinary foreman, and not alter ego or vice-principal; that the particular order given by Knox related merely to one of the details of the work, and was not given by him in

the performance of one of the non-delegable duties of the master; and that the plaintiff's injuries were, therefore, the result of the negligence of a fellow servant alone. The plaintiff excepts to the grant of the nonsuit.

*Shelby Myrick, Osborne & Lawrence,* for plaintiff in error.

*Lawton & Cunningham,* contra.

POWELL, J. (After stating the facts as above.)

1. In the case of *Brown* v. *Rome Machine Company,* post, 142 (62 S. E. 720), we go at some length into the rationale of why the law imputes certain assumption and imposes certain duties upon each of the parties to the relationship created by a contract of employment, and it will not be necessary now to elaborate these propositions. It is sufficient to say that if the nature of the master's work is complex and involves the presence and co-operation of a large number of men, so situated that individual independent action on their respective parts would render the doing of the work unsafe, the law imposes on the master the duty of organizing and maintaining a system of works by which reasonable safety can be secured. Frequently this is accomplished largely through rules and regulations promulgated and enforced by the master. In that event the doing of the work according to the rules and regulations is regarded as mere detail, and those doing it are considered as fellow servants, though some of them are superior servants and others inferiors, though some are bosses and others common laborers. Since transitory increases of risk and exposures to danger are reasonably to be anticipated, even under a prudently organized system of work, the servant is usually held to have assumed the risk as to such dangers, when they have not occurred through some special negligence of the master.

2. The master may not see fit to promulgate rules and regulations, or the work may present so many and various phases as to make it practically impossible for him to prepare any set of rules and regulations that would be sufficiently comprehensive and adequate to fulfil his duty in respect to creating and maintaining a safe system of work; and in this event he is required, either through himself or some person deputized by him, to give supervision to the work as it is done, and to provide, by special orders or directions, against the exigencies as they arise. "If, therefore, he chooses to leave to an employee the regulation of matters which

he ought to have provided for by special rules, such employee will be regarded as his representative." Labatt's Master and Servant, §574. If this representative handles an exigency negligently, the negligence is the master's.

3. The courts of this State are now thoroughly committed to the proposition that an employee, in performing one of the non-delegable duties of the master, is not a fellow servant with the other laborers who are merely doing the work. *Moore* v. *Dublin Cotton Mills*, 127 *Ga.* 614 (56 S. E. 839) ; *Dennis* v. *Schofield*, 1 *Ga. App.* 489 (57 S. E. 925) ; *Van Dyke* v. *Menlo Fruit Co.*, 129 *Ga.* 532 (59 S. E. 215). The rank or title of the employee is immaterial, in the ultimate consideration of the question. It is a negligent act chargeable against the master, if he, or the agent to whom he has deputed the duty of giving orders relating to the manner in which the work shall be done, gives an order by which a servant's safety is imperiled. Labatt's Master and Servant, §114 ; *Southern Cotton-Oil Co.* v. *Gladman*, 1 *Ga. App.* 263 (58 S. E. 249) ; *Moore* v. *Dublin Mills*, supra ; *Taylor* v. *Georgia Marble Co.*, 99 *Ga.* 517 (27 S. E. 768, 59 Am. St. R. 238) ; *City Council of Augusta* v. *Owens*, 111 *Ga.* 464 (36 S. E. 830).

4. Orders as to how the work shall be done, even though it be a particular piece of work, stand upon a different footing from mere work signals, and must be distinguished from them. Orders are generally the act of the master, and the work signals the act of fellow servants. Certain features of the case at bar illustrate this difference. The steamship company, through Knox, gave such an order when he directed that the laborers should proceed with the work of turning the bridge iron without waiting for the plaintiff, and his colaborer at the truck, to get out of the way; for that was a command relating to the manner in which the work should be done, determining, as a part of the system, the speed, the haste, or lack of haste, in which the work should be carried on. When the "header," or gang boss, said "turn," he gave a work signal,—a mere detail in the execution of the work,—enabling the men thereby to act in concert.

5. There was enough in the evidence to have warranted the jury in finding that the work was complex and of such a nature that it could not be carried on in reasonable safety without the establishment and maintenance of a system; that instead of creat-

ing a general and comprehensive system, based on rules and regulations, the master undertook to secure this safety by the giving of special instructions throughout the progress of the work, and that Knox was delegated with this authority; that in attempting to regulate the speed of the work, he gave a negligent order; and that, as a result of this order, the plaintiff was hurt. This being so, the court erred in granting a nonsuit.

The plaintiff also makes the point that the defendant filed a general demurrer to his petition, and that the court overruled it, thereby creating a res adjudicata as to the fact that a cause of action is set out; and that as he proved his case as laid, the court should not have granted a nonsuit. The overruling of a demurrer is a judgment binding on the parties, concluding the points of law necessarily involved. That does not mean that the plaintiff is absolutely entitled to recover if he proves his case as laid; for a general demurrer should be overruled, in an action based on negligence, when the jury, from the facts alleged, would be authorized to infer negligence, though they would not be bound to do so. In the light of the principal ruling already made in the foregoing opinion, it will not be necessary for us to discuss the question as to what particular points of law have been settled by the judgment on the demurrer.          *Judgment reversed.*