5684. HENDERSON *v.* OCEAN STEAMSHIP COMPANY.

1. It is the duty of a master to furnish to servants in his employ safe appliances for the work in which they are engaged; but when such appliances are furnished, and an injury to a servant is plainly attributable solely to negligence of fellow servants in the manner of using them or in failing to use them, the master is not chargeable therewith.
2. There being no evidence that the master knew or ought to have known of the dangerous conditions existing on account of failure to use the appliance furnished, and that the servant did not know and did not have equal means with the master of knowing, and by the exercise of ordinary diligence could not have discovered that condition, it was not error for the court to grant a nonsuit.

DECIDED FEBRUARY 13, 1915.

Action for damages; from city court of Savannah—Judge Davis Freeman. March 2, 1914.

*Oliver & Oliver,* for plaintiff. *H. W. Johnson,* for defendant.

RUSSELL, C. J. Robert Henderson was employed by the Ocean Steamship Company as a gang-man or laborer in loading one of its vessels. While going from an upper deck to one of the lower decks of the steamship "City of Memphis," where he had been ordered to work, he fell through an open cargo-hatch from the lower deck to the hold of the ship, and his arm was broken by the fall. In his petition he charged negligence on the part of the defendant in failing to keep the hatchways closed when not in use, and by an amendment alleged that the defendant knew or ought to have known of the condition of the hatchway, and that he did not know and did not have equal means with the defendant of knowing the condition of the hatchways, and that by the exercise of ordinary care he could not have known of this dangerous condition.

The evidence shows that the plaintiff had been engaged in this line of work for some fifteen years, and had been employed by the defendant for four years prior to the injury. On the day of the accident he had been at work for a half hour or more on the upper

deck, and was ordered to go to a lower deck to do other work. On this upper deck were two hatches or openings in the deck of the vessel, about five feet apart and each about eight feet square. On climbing down a ladder through one of these hatches, he started to walk back toward the stern of the ship, where he was to work. Having gone from the upper deck, where the sun was shining bright, to the lower deck, where it was more or less dark, he was "sort of blinded." Not being able to see, he walked up against some hatch covers lying between two hatches in the lower deck, and, on trying to walk around these covers, fell through the opening in one of the hatches, a considerable distance to the bottom of the ship, and received the injuries complained of. The plaintiff himself testified, "It is true, if you wait until your eyes get accustomed to the light, you can see when you get down there. . . You can see where you are going then."

According to the evidence, the defendant had a universal standing rule or order, by which the gang-men or laborers who were working in the ship were required to replace hatch covers when the work was stopped at any time or for any reason. The plaintiff testified: "As to what has been the rule and the custom relative to hatch covers on hatches not in use during that time, when they were not in use they were covered up; that was always the case ever since I was working there, . . always the rule since 1 have been there, to put them back on when they knock off; the men do that, the laborers who are working down there. . . That is a standing rule and has always been the order when I was there; all the time I worked there previous to my injury that was a standing rule. I am sure about that, the men have orders to put them back on. . . I say it is the universal rule down there to cover the hatches when they stop for lunch or dinner or anything." There is no evidence as to when this particular hatch was left open, but it was not in use at the time of the plaintiff's injury.

1. We are of the opinion that the injury was the result of the negligence of a fellow servant, and that the grant of a nonsuit was proper. It is apparent that the proximate cause of the injury was the failure of the defendant's servants to carry out what, from the evidence, appears to have been a universal rule. This case is very similar to the case of *Fraser* v. *Smith & Kelly*, 136 *Ga.* 18 (70 S. E. 792), and in our opinion the ruling there announced is espe-

cially applicable to the instant case. In that case it was said: "In a suit by an employee against his master to recover damages for injuries sustained in the service of the master, it was alleged, in effect, that the master had provided a safe place and appliances when properly adjusted, and that the servant was injured because of the carelessness of fellow servants in substituting for the safe appliance furnished by the master one that was improper and which rendered the place unsafe. *Held,* in such case the proximate cause of the injury was the negligence of the coemployees in substituting the improper appliance, and not any dereliction of duty in the master's failure in furnishing a safe place or proper appliances." In the present case the proved facts, with but slight variance, present such a case. In that case the servants used the appliance improperly, in the present case they failed to use it at all. In so far as the legal aspect of the situation is concerned, there is no difference. In each case it was the servant, and not the master, to whom the negligence was properly attributable. In the case of Mc-Laughlin *v.* Camden Iron Works, 60 N. J. Law, 557 (38 Atl. 677), it was said: "Where appliances for work are needed, the duty is on the master to use reasonable care in their selection, and he can not escape it by delegation; but carelessness in their use, or failure to use them, on the part of his servant, whereby injury is received by a fellow servant in the same common employment, is not chargeable to the master."

Counsel for the plaintiff in error contend that a jury might have determined that the officers of the company whose duty it was to see that the hatch-covers were in place were negligent. There was some evidence tending to show that the stevedore was in charge of the gang, and that he was the person who gave the orders to the laborers. In a case similar to this, however (The Louisiana, 74 Fed. 748, 21 C. C. A. 60), where a stevedore was engaged in discharging a cargo and fell through an unguarded hatchway into the between decks of a ship, it was held that if there was any obligation to have the hatchway closed, the duty of opening and closing it when necessary rested upon the squad of laborers working in the between deck, who were the stevedore's fellow laborers, and the steamship company was not liable. Judge Powell, speaking for this court, in the case of *Ocean Steamship Co.* v. *McDuffie,* 5 Ga. App. 127 (62 S. E. 1008), said: "It is sufficient to say that if

the nature of the master's work is complex and involves the presence and co-operation of a large number of men, so situated that individual independent action on their respective parts would render the doing of the work unsafe, the law imposes on the master the duty of organizing and maintaining a system of works by which reasonable safety can be secured. Frequently this is accomplished largely through rules and regulations promulgated and enforced by the master. In that event the doing of the work according to the rules and regulations is regarded as mere detail, and those doing it are considered as fellow servants, though some of them are superior servants and others inferiors, though some are bosses and others common laborers." We see no merit in this contention of the plaintiff in error.

2. The rules of the common law being applicable in this case, there was no presumption of negligence against the defendant, and the burden was upon the plaintiff to show that the defendant knew or ought to have known of the open hatchway. It was also necessary for the plaintiff to show that he did not know and did not have equal means with the defendant of knowing, and by the exercise of ordinary care could not have known, of the open hatchway. The evidence did not show these essential facts. The plaintiff testified: "I do not know when the covers were taken off. I have no idea." So far as the evidence shows, the covers might have been removed from the hatchway just a few seconds prior to the injury. There is no suggestion that the condition had existed long enough for the danger to have been discovered by the master, and therefore no constructive knowledge on the part of the master was shown. Besides, the evidence of the plaintiff himself shows that his opportunity for knowing of the condition was not only equal to but greater than the defendant's. Had he but waited a moment for his eyes to get accustomed to the darkness he could have seen. A member of the same gang of laborers, who was with the plaintiff and who testified in his behalf, said: "I did not fall in the hatch. I swung to the starboard side in walking. I went to the wing around the hatch, where I saw light. . . I went on that side where there was light. That is the reason I did not fall in. I suppose so." In fact all the evidence tends to show that the plaintiff had at least equal opportunity with the defendant to have ascertained the defects; and, as was said in *Hobbs* v. *Bowie,* 121 *Ga.* 421 (49 S. E.

285), "This being a suit for damages by an employee against his employers, which was governed by the common-law doctrine of master and servant, and it affirmatively appearing that the servant had equal means with the master of ascertaining the defective condition of the appliance alleged to have been the cause of his injuries, no recovery can be had against the master."

Judgment affirmed. Broyles, J., not presiding.