9864.    BERRYTON MILLS *v.* PARHAM.

1. "In order for a servant to recover for an injury on the ground that it resulted from his compliance with a direct order of his master, or of his master's representative, the servant must show that the order was a negligent one."

2. In this case the injury received by the plaintiff was the result of the negligence of a fellow servant, and it was error to overrule the motion for a new trial.

DECIDED JANUARY 29, 1919.

Action for damages; from Chattooga superior court—J. E. Rosser, judge pro hac vice. May 8, 1918.

*Denny & Wright,* for plaintiff in error.

*Wesley Shropshire, Murray & Draper, Glenn & Napier,* contra.

LUKE, J. Parham brought his action for damages against the Berryton Mills, a manufacturing corporation, to the March term, 1917, of Chattooga superior court, alleging substantially that he

was injured by defendant in the sum of $10,000 on July 29, 1916; that he was employed some four months prior by the defendant, through one Gus Hudson, vice-principal of defendant, as fireman of boilers; his regular duty under his employment was to fire the boilers, but he was required to perform such other services about said mill or plant as might be directed by defendant through said Hudson, foreman and vice-principal; that on July 29, 1916, defendant had two boilers of approximate capacity of 150 horse-power each; that these boilers are located in the boiler-room of defendant's plant, and are situated alongside and within a very few feet of one another, and are used for generating steam-power to drive the machinery of the plant; that the boilers are connected by a pipe-line through which the mud and sediment which accumulated in the boilers is drawn or allowed to escape; that along this pipe line are located two valves known as mud-valves, one of which is located alongside and on the outside of each boiler, and by means of such valves the mud and sediment is forced by steam to escape from said boilers through said pipe line and into another waste line of pipe connecting about midway between said boilers, which also has a valve to open and close said waste pipe line; the escape of steam is controlled by the valve nearest the boiler, and when the three valves are open, or waste-valve closed and the other two opened, the steam from one boiler will escape into the other; that on said July 29 the plaintiff was directed by said vice-principal, Hudson, to go into a boiler and fix a water-pipe in one of the boilers which was leaking, the boiler having been cooled down; that the plaintiff stated that he did not want to do so, for he did not know about the danger or anything about it, but he was assured by said vice-principal, Hudson, that the place was safe, and that there was no danger, and Hudson directed him to enter and go right into the boiler and do the work; that he was not aware of the danger incident to said service, and, relying on the assurance of said vice-principal, he entered said boiler and entered on the discharge of said duties required of him therein; that he had not, and could not have had by the exercise of ordinary care, such means of knowing the risk as the defendant had; that he was engaged in said work in the boiler, the fireman fired the other boiler under order of said vice-principal, opened the mud-valve nearest the boiler which was being fired by him, and allowed steam to escape into said pipe

line connecting the boilers; that the defendant negligently and without proper care and inspection had left open the mud-valve next to the boiler in which the plaintiff was engaged, performing service as directed, and that the steam entered the boiler in which he was engaged, and scalded, burned, and permanently injured him, causing him great pain and suffering; that the defendant had not exercised proper care to see that said valve was closed, or give him any notice thereof, or to warn him that the fireman was about to turn on steam, or any other warning whatever, and that the defendant did not inspect said valves, although it had full knowledge of his perilous position, and that no one was placed to guard said valve, and no direction was given to the fireman not to turn on the steam while the plaintiff was in the boiler, and that the defendant was negligent in failing to furnish and maintain a safe place for the performance of the plaintiff's work.

The evidence in substance discloses that Parham had been employed for some time by the mills,—sometimes firing these boilers and sometimes at other work. It became necessary to repair some of the tubes in one of the boilers, and the boiler was accordingly cooled off. Mr. Alexander, the only witness upon the question of cooling off this boiler, testified that he drew the fire from under it about 6:30 or 7 o'clock at night, that he then drained the boiler through the valve above described, and, after closing this valve, filled the boiler with cold water, and then drained this, repeating this several times; that he finally let the water out about 1 o'clock a. m., and *then closed the valve on this boiler*. After this, Mr. Hudson, Parham, and several others went to work on this boiler. At 5:30 a. m. this same fellow-servant, Alexander, turned the steam on from the live boiler, burning and scalding Parham. At that time (5:30 a. m.) the valve on the dead boiler was open, though it was underneath the boiler and the work was being done from above, and though no one was shown to have been anywhere near this valve after Alexander testified that he closed it. The two valves, the one on the dead boiler and the one on the live boiler, which Alexander opened, were only a few feet apart, and both were in sight of Alexander when he opened the valve on the live boiler. According to the testimony of Parham, both valves were not within the view of Hudson, where he was working, nor was Alexander within his view when he opened the valve on the

live boiler.  The testimony of Parham and all other witnesses showed that there was a standing order to the fireman always to close these valves after blowing off one of the boilers.

What was the proximate cause of the injury received by Parham? It cannot be said that the order from the vice-principal and the entering of the boiler at the time by Parham was negligence, for at that time there was no steam in the boiler and there was nothing dangerous about the task.  Was not the proximate cause of the injury the act of Alexander, the fellow-servant, in opening the valve on the boiler which had steam in it, or the leaving open of the valve on the boiler in which Parham was working.  If either be true, and this is the negligence relied upon, it seems to us that the case is controlled by the rule laid down in the Civil Code (1910), § 3129, that "except in cases of railroad companies, the master is not liable to one servant for injuries arising from the negligence or misconduct of other servants about the same business."  In a case somewhat akin in principle to this case, upon exceptions to a nonsuit, this court held that "It is the duty of a master to furnish to servants in his employ safe appliances for the work in which they are engaged; but when such appliances are furnished, and an injury to a servant is plainly attributable solely to the negligence of fellow servants in the manner of using them or in failing to use them, the master is not chargeable therewith."  See *Henderson* v. *Ocean Steamship Co.*, 15 Ga. App. 790 (84 S. E. 230).  The plaintiff, however, says that he was complying with a command from the master to engage about the work in the boiler, as against his objections so to engage himself.  This court has held that "In order for a servant to recover for an injury on the ground that it resulted from his compliance with a direct order of his master, or of his master's representative, the servant must show that the order was a negligent one under the circumstances.  If the order was negligent, and the servant knew of the peril of complying with it, or if he had equal means with his master of knowing of the peril, or by the exercise of ordinary care might have known thereof, then he cannot recover for an injury received in complying with the order."  *Simmons* v. *Southern Railway Co.*, 19 Ga. App. 524 (91 S. E. 917), and cases cited.  See also *Whiters* v. *Mallory Steamship Co.*, ante, 47 (97 S. E. 453).  We are convinced that the evidence in this case, even when viewed most favorably to the plaintiff,

shows conclusively that his injuries did not result from a negligent command of his master's representative, but were the result of the negligence of a fellow-servant, for which, under the law, the master is not liable in damages. We have carefully examined all the assignments of error, and, upon a consideration of the case as a whole, we· cannot hold that the evidence makes a case entitling the plaintiff to a judgment for his injuries. It was error for the trial court, to overrule the motion for a new trial.

*Judgment reversed.  Wade, C. J., and Jenkins, J., concur.*