27926. LOUISVILLE AND NASHVILLE RAILROAD COMPANY *et al. v.* CRAPPS.

DECIDED MARCH 7, 1940. REHEARING DENIED MARCH 29, 1940.

442

444

*Cumming, Harper & Nixon, Randall Evans Jr.,* for plaintiffs in error.

*W. D. Lanier, T. Reuben Burnside,* contra.

STEPHENS, P. J. (After stating the foregoing facts.)

■ The plaintiff alleges that the brakes were defective and were not in proper working order, that West, the defendants' track supervisor, directed the plaintiff to use the motor track-car, assuring him that it was in a safe and proper condition, and that relying thereon the plaintiff used the car. He further alleged that when he was within fifty feet of the crossing where the collision occurred, and discovered the approaching automobile, he immediately undertook to stop the car with the hand brakes, but on account of their inadequacy, defectiveness, and improper working condition the brakes would not hold and he was unable to stop the car and avert the collision. "The master is bound to exercise ordinary care . . in furnishing machinery equal in kind to that in general use, and reasonably safe for all persons who operate it with ordinary care

and diligence. If there are latent defects in machinery, . . unknown to the servant, of which the master knows or ought to know, he shall give the servant warning in respect thereto." Code, § 66-301. "A servant assumes the ordinary risks of his employment, and is bound to exercise his own skill and diligence to protect himself. In suits for injuries arising from the negligence of the master in failing to comply with the duties imposed by section 66-301, in order that the servant may recover it must appear that the master knew or ought to have known .. . of the defects or danger in the machinery supplied; and it must also appear that the servant injured did not know and had not equal means of knowing such fact, and by the exercise of ordinary care could not have known thereof." Code, § 66-303. "Every common carrier by railroad shall be liable in damages to any person suffering injury while he is employed by such carrier, . . from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defects or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves or other equipment: Provided, nevertheless, no recovery shall be had hereunder if the person killed or injured brought about his death or injury by his own carelessness amounting to a failure to exercise ordinary care; or if he, by the exercise of ordinary care, could have avoided the consequences of the defendant's negligence. . . If death shall not result from the injury, the presumption of negligence shall be and remain as provided by law in cases of injury received by an employee in the service of a railroad company." Code, § 66-401.

It appears from the allegations of the petition that when the plaintiff went to the track supervisor and reported the wreck of the motor-car used by him in the performance of the duties of his employment, this servant of the defendants ordered the plaintiff to use the car which he was operating at the time he was injured, and assured the plaintiff that such car was in a safe and proper condition for use. Under this state of facts, the plaintiff, in using the car with the defective brakes did not necessarily assume the risk incidental to the defective condition of the brakes. It could be inferred therefrom that the defendants, by the assurances made to the plaintiff, thus assumed any liability which might result from their negligence in furnishing to the plaintiff a car with brakes

in a defective condition. See *Atlantic Coast Line R. Co.* v. *Frierson*, 60 *Ga. App.* 465 (4 S. E. 2d, 131). A risk, not necessarily incident to the occupation, may arise out of the failure of the employer to exercise due care with respect to furnishing to the employee a suitable or safe appliance for the work. This the employee is not treated as assuming, until he becomes aware of the defect and of the risk arising from it, unless the defect and risk alike are so obvious that any ordinarily prudent person under the circumstances would have observed and recognized them. An employee does not however assume the risk of conditions of which he is not aware, or which in the exercise of ordinary care he could not have discovered. A servant would not assume the risk of defects in the condition of the brakes of the motor-car, unless he had actual knowledge thereof. See *Gray* v. *Garrison*, 49 *Ga. App.* 472, 482 (176 S. E. 412). An employee does not ordinarily assume the risks of the negligence of his employer.

But the defendants contend that the petition shows that the defective condition of the brakes was patent, and that such condition "could have been discovered by the plaintiff as well as by the defendant; and if both the plaintiff and the defendant had equal opportunities of discovering this patent defect in the appliance on the day the accident occurred, then the defendant would not be liable for an injury resulting therefrom." *Stewart* v. *Seaboard Air-Line Ry.*, 115 *Ga.* 624, 628 (41 S. E. 981). The plaintiff alleges that he did not know of the defective condition of these brakes and did not have equal means with the defendants of knowing thereof. The defendants urge that this allegation must yield to the allegations of fact contained in the petition which show that "he had at least equal opportunities with the master of discovering the defective condition" of these brakes, and the general demurrer should have been sustained. See *Lee* v. *Atlantic Coast Line R. Co.*, 125 *Ga.* 655 (54 S. E. 678). We do not agree with the defendants. The plaintiff alleges that West, the vice-principal of the defendants in so far as the plaintiff was concerned (*Moore* v. *Dublin Cotton Mills*, 127 *Ga.* 609, 56 S. E. 839, 10 L. R. A. (N. S.) 772), ordered him to take this car and use it in the performance of the duties of his employment, and assured him at the time that the condition of the car was good, that is, that it was in a safe and good condition for use. The plaintiff had a right to rely on this

statement and to use the car, unless the use thereof was so obviously dangerous that no person of ordinary prudence would undertake to use it.

"In an action for injury to a servant, resulting from his compliance with a direct and specific command of the master, given with reference to the manner, means, or instrumentality by which the master's work is to be performed, it is a question for the jury whether the risk involved in obeying the order is an ordinary hazard such as was assumed by virtue of the servant's employment, or whether under the existing circumstances the command was a negligent one, . . that is, where the circumstances are such that the master has either actual or constructive knowledge that a compliance with the command will be attended with unusual and unnecessary peril,—the danger incurred by the servant in obeying the order will not be taken to have been assumed by virtue of the employment, since 'a servant is bound to obey the order of his master unless the command includes a violation of the law, or the act required is so obviously dangerous that no person of ordinary prudence would undertake to perform it.' [Citing.] . . Even where under the circumstances the master neither has nor is chargeable with knowledge of the unusual and unnecessary risk involved in a compliance with such a command, and consequently the command would not ordinarily be taken to be a negligent one, yet where the order is accompanied with an express or plainly implied assurance of safety to the servant in a compliance therewith, the law implies a quasi new agreement to have been made whereby the master relieves the servant of his former assumption, and, *in an action by the servant for injuries thus occasioned, the master is not entitled to rely upon the servant's assumption of risk as a defense. Bush v. West Yellow Pine Co., 2 Ga. App. 295 (58 S. E. 529); Cherokee Brick Co. v. Hampton, 16 Ga. App. 53 (84 S. E. 328)."* (Italics ours.) *Central of Ga. Ry. Co.* v. *Lindsey, 28 Ga. App.* 198 (110 S. E. 636).

The petition does not show that the defective condition of these brakes was so patent and obviously dangerous that no person of ordinary prudence would undertake to use the car. The fact that it appears from the petition that the plaintiff had driven this car from Camak to the place where the collision occurred does not authorize this court to assume that the plaintiff must have used the

brakes in that he had evidently had to pass over public crossings between Camak and Pylant's Crossing, where the collision occurred, and therefore either discovered, or should have discovered the defective condition of the brakes.

It is the duty, as we have seen, of a master to furnish to his employee a safe appliance with which to perform the duties of his employment. *Henderson* v. *Ocean Steamship Co.,* 15 *Ga. App.* 790 (84 S. E. 230) ; *Jones* v. *Mallory Steamship Co.,* 23 *Ga. App.* 187 (97 S. E. 865). Also it will not be presumed that the servant knows of the defective condition of appliances furnished to him by his master. But on the other hand it may be presumed that the master knew of the existence of the defect, if it was such that the master should have known of it. For instance, where the defect is of a patent and obvious character this may indicate that the master should have known of it. *Ocean Steamship Co.* v. *Matthews,* 86 *Ga.* 418 (2-b) (12 S. E. 632) ; *Stewart & Jones Co.* v. *Griffin,* 19 *Ga. App.* 554 (91 S. E. 923). Also, an equal means or opportunity of knowledge of the existence of a defect in an appliance furnished the employee to work with is not sufficient to constitute a bar to the right of the injured employee to recover where it was not the duty of the employee to inspect such appliance; provided, of course, that the servant is not negligent himself in not discovering a patent defect which is so apparent and obviously dangerous that an ordinarily prudent man would not use the defective appliance. *Austin* v. *Appling,* 88 *Ga.* 54 (13 S. E. 955). This is true because the master owes to the employee the duty of furnishing him with a safe appliance, and there rests upon the master the primary duty of inspection. *N., C. & St. L. R. Co.* v. *Hilderbrand,* 48 *Ga. App.* 140 (172 S. E. 87). There rests on the master the duty of furnishing a reasonably safe appliance for the servant to work with, and of inspecting it to discover latent defects and dangers therein. Ordinarily the servant is not bound to detect latent defects, or such as would be disclosed only by careful examination and would not be manifest to a person of ordinary intelligence or experience in the line of work in which the servant was engaged in using the appliance. *International Cotton Mills* v. *Carroll,* 22 *Ga. App.* 26 (95 S. E. 472). Thus, a master is not liable for injuries sustained by his servant in consequence of a defect in the appliance which the servant was using when the defect was such that it was known to

the servant or could have been known by the exercise of ordinary care. *Texas Co.* v. *Hearn*, 23 *Ga. App.* 408 (98 S. E. 419). So, under the facts alleged, applying the principles of law applicable thereto, as was aptly stated in the *Frierson* case, supra, "under the allegations of the petition as amended it appears that the defective condition of the brakes on the motor-car, which rendered it impossible for the plaintiff to control [stop] the car and avoid the collision with the automobile which was crossing the defendant's tracks in front of the plaintiff, was the proximate cause of the injuries received by the plaintiff in the collision [between the motor-car in which he was traveling and the automobile]. Under the facts alleged, it [would be] a question of fact for the jury whether the negligence of the defendant in furnishing the plaintiff a motor-car with defective brakes, or the negligence of the plaintiff, or that of the operator of the automobile, was the proximate cause of plaintiff's injuries."

The duty rested upon the defendants to furnish to the plaintiff employee a safe place to work with reference to its tracks and right of way, where the performance of his duties necessitated his use of its tracks and right of way. See Code, § 66-401. The defendants were under a duty to observe all ordinary and reasonable precautions to keep their track and right of way in such condition that their employees engaged in the performance of their duties along and upon the tracks could safely discharge those duties, and if by the neglect of the defendants the track and right of way became unsafe, and the plaintiff in the exercise of due care for his safety was injured as a result of the defendants' negligence, he may recover. It is alleged that the plaintiff was not aware of the existence of the public crossing at the place where he was injured, which was hidden from his view by the rank undergrowth along the right of way of the defendants at this point, and also by an embankment on each side of the railroad tracks, and that the plaintiff was thus prevented from observing the crossing and the automobile approaching the crossing until he was within about fifty feet of the crossing, and did not have time to avoid the collision, the brakes of the car failing to work properly and to stop the car within fifty feet. The plaintiff had a right to assume that the track and right of way were not dangerous. It does not appear as a matter of law that the plaintiff failed to exercise due care for his own safety in assuming

that he could safely proceed forward at this point. In this connection see *Central Railroad Co.* v. *Mitchell,* 63 Ga. 173, 181; *Preston* v. *Central Railroad Co.,* 84 Ga. 588 (11 S. E. 143). The contention of the defendants that the plaintiff predicated his right to recover, in addition to the fact of the improper working order of the brakes and of the hidden crossing, on the fact "that the brake lever was made of a springy metal by reason of which the plaintiff was hurled forward when the track-car struck the bumper of the truck," is without merit. The plaintiff did not seek a recovery of the defendants because he received injuries on account of the fact that "the brake lever was made of a springy metal" and he does not allege that the defendants were negligent in furnishing him with a car with the brake lever made of such metal, but, properly construing the petition, the plaintiff claimed that the car was equipped with a hand brake that extended from beneath the car up through its floor, that this metal lever was about three feet high, and that in order to apply the brakes to the car it was necessary to pull this lever towards the person operating the car, that this lever was made "of metallic material of a springy nature," and that on the occasion in question the plaintiff was pulling back upon this hand brake in order to apply the brake and stop the car, and that the brake did not serve to stop the car, but when the car suddenly struck the automobile truck at the crossing the metal brake lever acted as a spring, that is, it was released by the impact and suddenly jerked forward into an upright position and the plaintiff having a hold on the lever and pulling back thereon with all his might at the time was thereby suddenly propelled forward and thrown clear of the track-car. The plaintiff alleges that by reason of the defective condition of the brakes the lever was caused to act as it did and throw the plaintiff from the car as alleged. The construction placed by the defendants upon this claim of the plaintiff is not borne out by a reasonable and proper construction of the allegations of the plaintiff's petition. It follows that the trial judge did not err in overruling the general demurrer to the plaintiff's petition.

■ But the defendants urged that the verdict was not authorized by the evidence and was contrary to law. They insist that the evidence shows without contradiction that the plaintiff was injured because of his own carelessness amounting to a failure to exercise

ordinary care, or that if the plaintiff had exercised ordinary care for his own safety he could have avoided the consequences of the negligence of the defendants, if they were negligent. The defendants rely on the decision in *Southern Ry. Co.* v. *Taylor,* 137 *Ga.* 704 (73 S. E. 1055), as follows: "In order for a servant to recover for an injury on the ground that it resulted from his compliance with a direct order of his master, or his master's representative, the servant must show that the order was a negligent one under the circumstances. If the order was negligent and the servant knew of the peril of complying with it, or if he had equal means with his master of knowing of the peril, or by the exercise of ordinary care might have known thereof, then he can not recover for an injury received in complying with the order." The defendants contend that under the facts appearing without dispute from the evidence the plaintiff is not entitled to prevail in this case. It is claimed that "there is no evidence to show that there was any negligent order issued" to the plaintiff by the track supervisor, West, and that the evidence does not show that West ordered the plaintiff to take the car in question, but that it appears therefrom that the plaintiff came to West and asked that he be supplied with another car as the one he had been using had been wrecked, and that West told the plaintiff that he could use the one on hand at Camak, being the car involved in this case. While it might be that West did not exactly command the plaintiff to get this car, viewing the evidence as a whole, West, in response to the request of the plaintiff for a car to carry on his work, directed the plaintiff to take this particular car which was used by the defendants as a relief car. West was then track supervisor, and the person to whom the plaintiff should apply in order to obtain the necessary appliances to carry on his duties for the defendants, and the plaintiff testified that West told him to use this car and assured him that it was in a safe and good condition for use. It is true that West testified that he did not tell the plaintiff that the brakes on this car were in a good condition, but West does not deny that he told the plaintiff to use this car and that it was in a safe and good condition. Under the law, set forth in division 1 of this opinion, it was the duty of the master, for whom West was acting, to furnish to the plaintiff a safe appliance with which to perform his work. We can not agree with the defendants that the evidence did not au-

thorize a finding that the defendants, through West, were negligent in directing that the plaintiff use this particular car, in response to the plaintiff's request for a car to carry on his work, and in assuring the plaintiff that such car was in a safe and good condition for use.

Further, the defendants contend, that, "even if there were such a negligent order," the plaintiff "knew of the peril of complying with it, or had equal means of knowing the peril, or, by the exercise of ordinary care, might have known" thereof. The defective condition of the car relative to its brakes was not so patent and obvious that the use of the car by the plaintiff under the circumstances was negligence on his part barring a recovery. The plaintiff testified that it would have been necessary for him to get underneath the car and inspect the brakes in order to have observed their faulty condition, and that he did not inspect them but relied upon the assurance of West that the car was in a good and safe condition. The plaintiff had not equal means with the defendants of knowing of the defective condition of the brakes. The car had been in the possession of the defendants, and it was their duty to deliver it to the plaintiff in a good condition for the use to which it was to be applied by the plaintiff. The primary duty of inspection of the car was not on the plaintiff, under the facts of the case, but rested on the defendants. The plaintiff's immediate superior directed the plaintiff to take the car and use it in the performance of his work, assuring the plaintiff that it was in a safe and good condition.

The defendant relies on the decisions of the Supreme Court in *Central Railroad & Banking Co.* v. *Kenney,* 58 *Ga.* 485 (2), and *Kenney* v. *Central Railroad,* 61 *Ga.* 590. In the former case it was held that "A section-master in temporary charge of a hand-car must note such defects in it as are discoverable in the reasonable and ordinary exercise of diligence in the course of his duty, and decline or cease to use it if it be obviously unsafe; otherwise, he can not recover for an injury to himself which his declaration alleges to have been caused, in part, by the defective character or condition of the car." In the opinion the court said: "The person injured being a 'section-master' (a position requiring the daily use of a hand-car), and having some years' experience in his business, and the declaration alleging that the injury was caused, in part, by a

defective hand-car, which car, according to the evidence, was, at the time, in use by him, and under his control, he can not recover without making it appear that he did not discover the defect in time to avoid exposing himself to the danger, or that the defect was of such a nature as not to be discoverable in the reasonable and ordinary exercise of diligence in the course of his duty—55 *Ga.* 133, 279." The above ruling was based on the principle enunciated by the Supreme Court in *Johnson* v. *W. & A. Railroad Co.,* 55 *Ga.* 133, that "Where an employee of a railroad company knowingly uses defective machinery, he can not recover damages for injuries resulting therefrom." In *Central Railroad & Banking Co.* v. *Kenney,* supra, the plaintiff had partly predicated his right to recover on the defective construction of the wheels of the hand-car, "the same not being securely and properly fastened at the axle, but loosely and carelessly attached, [so that] the said car ran off the track in passing over said ' frog.' " The evidence for the plaintiff in that case was as follows: "The plaintiff, under the direction of the supervisor, had been engaged in measuring wood and crossties along the line of the railroad. The supervisor had furnished to plaintiff his crank-car for use in discharging this duty. He met J. T. Dorsey, also a section-master, at Lovejoy's station, who stated to him that the supervisor directed that he (Dorsey) should accompany him over his (plaintiff's) section. Dorsey, two negroes and plaintiff, then went on the same crank-car in the direction of Hampton. When two or three miles from the last-named station, plaintiff ordered the car to be stopped and taken off the track, in order to allow a train to pass. Plaintiff *observed* one of the hands working on the wheel of the car. He stopped him and *examined* it. He *ascertained* that the wheel was not properly put on. He and Dorsey put on the wheel and drove in the wedge. Plaintiff then *considered* it as *safe* as it ever was." (Italics ours.) The plaintiff's evidence then showed that after the train had passed they proceeded on toward Hampton, and when they struck the "frog" at Hampton the car was thrown from the track and the plaintiff was injured.

In the present case it appears from the evidence that the plaintiff was directed by the track supervisor of the defendant to take the car and use it, was assured by the supervisor that the car was in a good and safe condition for use, and that at the time he did not know of the defective condition of the brakes. This does not

appear in either of the cases above referred to. It does not appear that anything occurred from the time the plaintiff was directed to take the car, and did take the car, and the time of the accident which resulted in his injury, that disclosed to the plaintiff the defective condition of the brakes, or that should have put the plaintiff on notice that the brakes were defective. As we have seen, under the facts of the case at bar there was no duty upon the plaintiff to make a close examination of the car at the time it was delivered to him, but the primary duty of inspection rested on the defendants. Under the evidence the jury were authorized to find that the defective condition of the brakes on this car was not obvious, and could not have been observed by the plaintiff when the car was delivered to him unless he stooped and looked at that part of the brakes underneath the car. It does not appear as a matter of law from the facts in this case that the plaintiff employee could have discovered the defective condition of the brakes in time to avoid exposing himself to the danger occasioned thereby, or that such defective condition was of such a nature as to be discoverable by him in the reasonable and ordinary exercise of diligence in the course of his duty. While it is true the plaintiff stated on cross-examination that he could see that the brake shoes, which fastened to the wheels on application of the brakes, were not in good condition, but were worn, it does not appear that this statement was made before the plaintiff took the car and proceeded towards Harlem with it. It is to be inferred that the plaintiff was referring to the time immediately after the collision. More than once in his testimony the plaintiff positively stated that the defective condition of the brakes was observable only by stooping and looking underneath the car, and could not be casually observed as one approached the car on the morning when he was directed by his immediate superior to use it. The plaintiff positively testified that he did not examine the brakes, and did not know they were defective, but relied on the assurance of the track supervisor that the car was in a good and safe condition to be used. The jury were authorized to find, as they did, that the defective condition of the brakes was not patent and obvious.

The case at bar is not like *Kenney* v. *Central Railroad,* supra. There the plaintiff, a section-master, while riding in a hand-car with another employee of the railroad who was operating the car,

was injured by the manner in which the car was being operated by another employee working under the plaintiff. It appeared that had the plaintiff in that case been seated on the hand-car behind the crank with which the car was propelled, instead of in front of it, it would have been impossible for him to have been knocked off and run over; that the car was at the time being operated backwards; that the plaintiff was seated thereon in this manner so that the car could be operated backwards instead of forwards; and that the plaintiff, who was in charge of the car, had been running it backwards, with himself seated in front of the crank, for about two months, and that he did not consider "it unsafe." The plaintiff was injured by reason of the fact that the operator of the car had his coat on while propelling the car with the crank, and this coat became caught in the crank, throwing this employee against the plaintiff and knocking the plaintiff off the car and causing him to be run over by the car. The case at bar is not one where the employee knowingly undertook to use a dangerously defective tool or appliance furnished him by the master, under the immediate command of a superior employee, as in the case of *Bell* v. *W. & A. R.*, 70 *Ga.* 566. The alleged defective condition of the brakes of the track-car was not such as might have been discovered by the plaintiff in the exercise of ordinary prudence. Nor, under the facts in this case, was it his duty to make a special examination or inspection of the track-car before using it.

The evidence does not show that the cause of the injuries to the plaintiff were brought about by the condition of the metal of the brake lever, that the metal, as alleged by the plaintiff, was "springy," and this catapulted the plaintiff forward and out of the car upon colliding with the automobile truck, resulting in the plaintiff's being injured, and that this was not due to any fault of the defendants, but because the plaintiff continued to hold on to the lever while it was pulling away from him, and thus the plaintiff "was hurled forward by the spring of this amazingly flexible piece of steel." The jury were authorized to find that the plaintiff necessarily had to grasp this hand brake and pull it toward him in an attempt to apply the brake when he saw the approaching automobile truck, that if the brake had been in good condition the plaintiff could have stopped the car before it struck the truck, that the plaintiff was pulling the lever towards him, and when the car hit

the truck the sudden impact "released the brakes" and the "lever acted as a spring and pitched" the plaintiff "ahead of the car" when it thus came back to an upright position.

The jury were authorized to find that the plaintiff did not know of the existence of Pylant's Crossing, and was not informed thereof by his superior when he was directed to operate the car from Camak to Harlem, and that as he approached the crossing his vision was partly obscured by a bank on each side of the railroad and by a high and rank growth of weeds and bushes along the right of way between where he was and the crossing, and that he was thus prevented from observing the crossing and the automobile approaching it until he was within about fifty feet thereof, and therefore did not have time to avoid colliding with the automobile although he did all he could to stop the car with the defective brakes. It was the duty of the defendants to furnish to the plaintiff a safe place to work with reference to the tracks and right of way where the performance of his duties necessitated his use thereof, and the plaintiff had a right to assume and rely on the proper performance of such duty by the defendants. The evidence does not show as a matter of law that the plaintiff knew of the existence of Pylant's Crossing. This case was fairly submitted to the jury, and there are no exceptions to the charge to the jury or failure to charge, or to any ruling on the admission or exclusion of evidence. The defendants complain only that the verdict was contrary to law and the evidence and without evidence to support it. There was ample evidence to sustain the allegations of the petition as to the plaintiff's injuries, that they were caused by the negligence of the defendants, and that the plaintiff was without such negligence as would bar a recovery. The verdict was for a reasonable amount, considering the nature and extent of the plaintiff's injuries, and was not without evidence to support it. The trial judge did not err in overruling the defendants' motion for new trial.

*Judgment affirmed. Sutton, J., concurs.*

FELTON, J., dissenting. The employee in this case could have discovered the alleged negligence of his superior by the exercise of ordinary care for his own safety and the safety of others. An employee assumes the risk of his master's negligence which he can discover by the exercise of ordinary care. In this case the employee was not ordered to use the alleged defective appliance. If he had

been so ordered my opinion would be different. My opinion is strengthened, I think, by the rules of the company which are in evidence in this case. The pertinent parts are as follows: "Do not assume anything in connection with the operation of your motive equipment on the main line, but know what you are doing and know that you are doing the right thing in all cases. . . Foremen must be vigilant at all times to protect, not only themselves but the men under their supervision, from incurring personal injuries. . . It is up to you to supply the judgment and care necessary to prevent personal injury to any member of your gang. Nearly all personal injuries are the result of carelessness, a human weakness which can be overcome by careful thought and judgment. . . The responsibility for the safety of motor car and men riding upon it rests *wholly* with the foreman in charge of the car. We have no control over the movement of automobiles at highway crossings, and it is not practical to require trains to protect against motor cars; therefore the entire burden of preventing collisions rests with those who are operating and who are in responsible charge of the motor car."